UNITED STATES of America, Plaintiff–Appellee,

v.

William R. WILLIAMS, Defendant–Appellant.

No. 96–2582.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 13, 1996.

Decided Dec. 18, 1996.

Timothy A. Bass (argued), Office of the United States Attorney, Springfield, IL, for Plaintiff-Appellee.

David B. Mote (argued), Office of the Federal Public Defender, Springfield, IL, for Defendant-Appellant.

Before CUMMINGS, RIPPLE and DIANE P. WOOD, Circuit Judges.

RIPPLE, Circuit Judge.

William R. Williams was convicted of threatening the life of the President of the United States. *See* 18 U.S.C. § 871. He appeals his sentence of five years incarceration followed by three years of supervised release. He claims that the government breached its plea agreement by moving for an upward departure to the five year statutory maximum sentence. For the reasons set

forth in the following opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

### A. Facts

On October 11, 1995, Mr. Williams was indicted for mailing a letter to the United States Secret Service that threatened the life of the President of the United States. On January 20, 1996, he entered into a plea agreement with the government. Paragraph 9 of that agreement sets out certain points of agreement between Mr. Williams and the government with respect to the applicable guideline range:

9. Based on the information currently available, the defendant and the government agree on the following points regarding the application of the Sentencing Guidelines to the offense charged in the indictment:

a. The base offense level is 12 pursuant to § 2A6.1(a) of the Sentencing Guidelines.

b. The offense level should be increased by three levels pursuant to § 3A1.2(a), because the victim was a government officer and the offense of conviction was motivated by such status.

c. The offense level should be reduced by two levels pursuant to § 3E1.1(a) of the Sentencing Guidelines because the defendant has clearly demonstrated a

recognition and affirmative acceptance of personal responsibility for his criminal conduct.

Other pertinent parts of the plea agreement read:

5. The parties agree that at the time of sentencing both the defendant and the government will be free to recommend whatever sentence they deem appropriate.

. . . .

10. The defendant and the government agree that the above statement regarding Sentencing Guidelines is not binding on the Court, and relates only to the positions the parties take regarding the applicable guideline range based upon the information of which they are currently aware. The Court will remain free to make its own independent determination of the applicable guideline range and to impose whatever sentence it deems appropriate.

### B. Proceedings in the District Court

On June 12, 1996, the government filed its commentary on sentencing factors, indicating its intention to move at sentencing for an upward departure from the proposed Sentencing Guideline recommendation pursuant to 18 U.S.C. § 3553(b) and U.S.S.G. § 4A1.3 (Adequacy of Criminal History Category).[1] This recommendation was based upon the contention that Mr. Williams' Criminal History Category did not adequately reflect the seriousness of his past criminal conduct or the likelihood that Mr. Williams had the pro-

---

1. U.S.S.G. § 4A1.3, Adequacy of Criminal History Category (Policy Statement), provides:

If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guidelines range. Such information may include, but is not limited to, information concerning:

(a) prior sentence(s) not used in computing the criminal history category (*e.g.*, sentences for foreign and tribal offenses);

(b) prior sentence(s) of substantially more than one year imposed as a result of independent crimes committed on different occasions;

(c) prior similar misconduct established by a civil adjudication or by a failure to comply with an administrative order;

(d) whether the defendant was pending trial or sentencing on another charge at the time of the instant offense;

(e) prior similar adult criminal conduct not resulting in a criminal conviction.

A departure under this provision is warranted when the criminal history category significantly under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes. . . .

. . . .

Where the court determines that the extent and nature of the defendant's criminal history, taken together, are sufficient to warrant an upward departure from Criminal History Category VI, the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case.

pensity to commit other similar crimes. Mr. Williams objected to the government's motion for an upward departure on the ground that it breached the plea agreement.

Mr. Williams was sentenced on June 24, 1996. Neither side objected to the presentence investigation report, in which the Probation Office calculated a guidelines range of 37 to 46 months, based on an offense level of 14 and a Criminal History Category of VI. The base level was calculated as 17 pursuant to U.S.S.G. § 4B1.1(F),[2] due to Mr. Williams' status as a career offender. Additionally, there was a two-point reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a)[3] and a one-point reduction for a timely plea pursuant to U.S.S.G. § 3E1.1(b)(2).[4] Thus, the probation officer calculated that the total offense level, after enhancements, was 14 with a career offender Criminal History Category of VI.

The district court then adopted the presentence report with the offense level of 14. However, partially basing its decision on U.S.S.G. § 4A1.3 (Adequacy of Criminal History Category) and *United States v. McKinley*, 84 F.3d 904, 911 (7th Cir.1996) (holding that the district court may upwardly depart by incrementally moving down sentencing table until it finds appropriate guideline range), the district court determined that an upward departure was warranted based on the seri-

ousness of Mr. Williams' criminal history. Thus, the district court moved down the sentencing table three levels to offense level 17, which under Criminal History Category VI has a guidelines range of 51 to 63 months imprisonment. The district court then sentenced Mr. Williams to the statutory maximum of five years (60 months).

At the sentencing hearing, the district court replied in the negative when asked by Mr. Williams' counsel if he were basing his decision on the government's argument for an upward departure. The district court then stated that it was basing the decision purely on the past seriousness of Mr. Williams' criminal history. The district court also noted that Mr. Williams had the likelihood of committing future similar crimes, especially as this was his third conviction for threatening to kill a federal employee, two Presidents and a federal judge.

## II

## DISCUSSION

### A.

■ We must decide whether the plea agreement between the government and Mr. Williams was breached by the government's decision to seek an upward departure because of Mr. Williams' criminal history.[5] Be-

---

2. U.S.S.G. § 4B1.1, Career Offender, provides:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. If the offense level for a career criminal from the table below is greater than the offense level otherwise applicable, the offense level from the table below shall apply. A career offender's criminal history category in every case shall be Category VI.

. . . .

| Offense Statutory Maximum | Offense Level |
|---|---|

. . . .

| (F) 5 years or more, but less than 10 years | 17 |

3. U.S.S.G. § 3E1.1(a), Acceptance of Responsibility, provides:

(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

4. U.S.S.G. § 3E1.1(b)(2) provides:

(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level **16** or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:

. . . .

(2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently,

decrease the offense level by 1 additional level.

5. The district court stated on the record that it was not influenced by the recommendation of the government. We have no reason to doubt that statement. However, the Supreme Court has made it clear that the appropriate inquiry is whether the government breached its plea agreement. *Santobello v. New York*, 404 U.S. 257, 262–63, 92 S.Ct. 495, 499, 30 L.Ed.2d 427

cause plea agreements are contracts, we determine whether the agreement is ambiguous or unambiguous as a question of law, reviewing the plea agreement de novo. *United States v. Ingram*, 979 F.2d 1179, 1184 (7th Cir.1992), *cert. denied*, 507 U.S. 997, 113 S.Ct. 1616, 123 L.Ed.2d 176 (1993). "Plea agreements are contracts, and their content and meaning are determined according to ordinary contract principles." *Id.* However, plea agreements "are 'unique contracts'[,] and the ordinary contract principles are supplemented with a concern that the bargaining process not violate the defendant's right to fundamental fairness under the Due Process Clause." *Id.* (citation omitted). We review the language of the plea agreement objectively and hold the government to the literal terms of the plea agreement. *United States v. Rourke*, 74 F.3d 802, 806 (7th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 1840, 134 L.Ed.2d 942 (1996). Although the government must fulfill any express or implied promise made in exchange for a guilty plea, the parties' rights under the plea agreement are limited to those matters upon which they actually agreed. *United States v. Jimenez*, 992 F.2d 131, 134 (7th Cir.1993).

### B.

■ Reading the plea agreement objectively and relying on the literal language of the agreement, we must conclude that the government did not breach its agreement with Mr. Williams. The parties stated in paragraph 9 certain areas of agreement with respect to the sentencing process. That paragraph contains, explicitly and implicitly, important limitations. First, it states explicitly that it is based on "the information currently available." R.20 at 4. The record does not show affirmatively that the government had available to it, at the time of the execution of the plea agreement, sufficient information to take a definitive stand with respect to the possibility of an upward departure based on criminal history. Second, the paragraph, literally read, states only areas of agreement between the defendant and the

government. It does not bind the government to take a definitive position with respect to any of the areas mentioned or, more importantly for present purposes, with respect to any other aspects of the sentencing process. Thus, what the parties actually agreed upon was that, as matters stood on the date of the execution of the agreement, the sentencing calculation required by the guidelines should include a two-level reduction for acceptance of responsibility in exchange for his guilty plea. This two-point reduction pursuant to U.S.S.G. § 3E1.1(b)(2) was calculated in Mr. Williams' presentence investigation report and by the district court as part of the sentencing guideline calculation. Thus, Mr. Williams never lost what he bargained for in the plea agreement.

This reading of the literal language of paragraph 9 of the plea agreement does not give it a crabbed interpretation that is inconsistent with the remainder of the plea agreement. The unambiguous language of paragraph 5 states that "at the time of sentencing both the defendant and the government will be free to recommend whatever sentence they deem appropriate." R.20 at 2. Paragraph 5 does not contradict paragraph 9 because paragraph 9 does not recite any agreement with respect to the matter of criminal history. Therefore, the government was within its contractual rights, pursuant to paragraph 5 of the plea agreement, when it moved for the upward departure.

We are not confronted here with a prosecutorial change of position from the terms agreed upon in the plea agreement. Therefore, we cannot accept Mr. Williams' suggestion that this case is governed by *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Here, the government complied with the promise made—the recommendation that the sentencing calculation include a reduction for Mr. Williams' acceptance of responsibility. For the same reason, the decision of our colleagues in the First Circuit, *United States v. Canada*, 960 F.2d 263 (1st Cir.1992), upon which Mr. Williams

(1971); *United States v. Fields*, 766 F.2d 1161, 1171 n. 3 (7th Cir.1985) ("[I]f we believed that the government's recommendation violated the plea agreement, we would be required to remand

for resentencing regardless of whether it was clear that the sentencing judge was influenced by the improper recommendation.").

relies, does not support relief in this case. In *Canada*, the parties agreed to recommend 36 months incarceration, yet the prosecutor failed to acknowledge this recommendation at sentencing. *Id.* at 269. Eventually, the prosecutor grudgingly referred to the plea agreement, but then suggested a "lengthy period of incarceration" to send "a very strong message." *Id.* The First Circuit concluded that the prosecutor's overall actions implied repudiation of the government's bargain and, consequently, that the government failed to comply with the plea agreement. *See id.* at 270–71. *Canada* is neither controlling nor persuasive because the plea agreements at issue are not analogous. In the *Canada* plea agreement, there was no language that the parties agreed that they would be able to recommend to the district court whatever sentence they deemed appropriate. In contrast, Mr. Williams' plea agreement does contain such language.

■ In reaching our conclusion, we nevertheless take this occasion to remind the government of its high responsibility to deal fairly and forthrightly in the exercise of its responsibilities with respect to plea bargaining. *See generally Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). As the court emphasized in *Ingram,* 979 F.2d at 1184, such agreements are not simply ordinary contracts; they implicate important constitutional rights, and their negotiation and execution require the utmost circumspection on the part of the government. At the same time, we also note that there is an important lesson for defense counsel in our holding. It is the duty of defense counsel to examine carefully the contours of the plea agreement and to advise carefully the defendant as to those matters that are covered by the agreement and those matters that are not.

### Conclusion

For the foregoing reasons, the district court's judgment is affirmed.

AFFIRMED.