**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Charles T. GRIMM, Defendant–Appellant.**

**Nos. 98–2140, 98–2429.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 7, 1998.

Decided March 17, 1999.

Peggy A. Lautenschlager, Larry Wsalek (argued), Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

Charles W. Giesen (argued), Giesen Law Offices, Madison, WI, for Defendant–Appellant.

Before COFFEY, FLAUM, and EVANS, Circuit Judges.

FLAUM, Circuit Judge.

Defendant Charles Grimm appeals the sentence he received after pleading guilty, pursuant to a written plea agreement with the government, to conspiracy to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846. Grimm raises several challenges to the proceedings below. First, he argues that the government breached the plea agreement when it withdrew its recommendation for acceptance of responsibility and brought the issue of Grimm's possession of a firearm to the sentencing court's attention. Second, the defendant argues that the district court erred in denying him a reduction for accep-

tance of responsibility. Third, Grimm claims that the district court erroneously enhanced his sentence based on possession of a gun in connection with the offense. Finally, Grimm argues that the district court erred in denying him a reduction based on the safety valve provision of the sentencing guidelines. For the reasons stated herein, we remand for resentencing.

## I. BACKGROUND

Charles Grimm worked as a courier for drug runner Cesar Duran. Grimm's role in the drug operation was to drive a car carrying marijuana from Arizona to Madison, Wisconsin. The usual scenario involved Duran transporting a vehicle already loaded with marijuana to Grimm, though on one occasion Duran loaded a car at his ex-wife's house while Grimm waited for him there. Grimm would drive the drug-filled car to Wisconsin, then fly back to Arizona. For all but one delivery, Grimm used a car provided by Duran or rental cars. Grimm used his own car, a 1993 Chevy Lumina, to transport marijuana on only one occasion, in July 1997.

In 1996, government authorities discovered Duran's marijuana operation. Grimm was arrested for his involvement in the drug conspiracy on August 29, 1997 at a bar in Phoenix, Arizona. Upon his arrest, the police found a handgun locked in the trunk of Grimm's Chevy Lumina.[1] Grimm did not have any drugs with him or in the car at the time of his arrest.

Grimm eventually discussed and entered into a plea agreement with the government to admit his role in the conspiracy. On February 2, 1998, two weeks before the plea agreement was signed, Grimm provided the government with an eight-page written proffer (the "agreement" or the "plea agreement") setting forth his involvement in the conspiracy. Among the provisions contained in the agreement, and relevant to this appeal, were the following: (1) the government would recommend a three-level sentence reduction for acceptance of responsibility based on the facts then currently known to it; and

(2) the government would recommend a sentence reduction pursuant to the safety valve provision of the sentencing guidelines. In the agreement, Grimm admitted to conspiring with Duran from March 1996 to August 1997. Based on his discussions with the government and on the proposed plea agreement, Grimm believed he was looking at a sentence of 57 to 71 months.

The government contends that it did not rely on any information in the written agreement when it entered into the plea agreement with Grimm and that the proffer was merely an unsigned draft. However, an Assistant United States Attorney did sign the proffer's transmittal letter as "approved and agreed to." Additionally, the government conceded, both in its Sentencing Memorandum to the district court and in its brief to this court, that it was bound by the terms of the plea agreement. Thus, there is no real dispute as to whether there was a written, binding plea agreement in this case.

On February 17, 1998, Grimm pled guilty to conspiring to distribute marijuana, pursuant to the written plea agreement with the government. On April 7, 1998, a few days before the sentencing hearing, the government claimed that it had new evidence that Grimm had denied relevant conduct and therefore withdrew its recommendation for a reduction based on acceptance of responsibility. The government also claimed that Grimm no longer qualified for the safety valve reduction. Grimm objected to these sentencing recommendations on the grounds that they breached the plea agreement.

The district court sentenced Grimm to 170 months imprisonment and denied Grimm's objection that the government breached the plea agreement. The district court also denied Grimm a three-point sentence reduction for acceptance of responsibility, added two levels for possession of a gun in connection with the offense and refused to apply the safety valve provision.

---

**1.** Grimm was a licensed private investigator and had a permit to carry a firearm which was valid only in the State of Arizona.

## II. ANALYSIS

Grimm raises four issues on appeal. First, he argues that the government breached the plea agreement when it withdrew its recommendation for acceptance of responsibility and raised the issue of his possession of a firearm, after implicitly promising not to do so by agreeing to recommend the safety valve reduction. Second, he claims that the district court erred in denying him a sentence reduction for acceptance of responsibility. Third, Grimm argues that the district court erred in applying a two-level enhancement for possession of a dangerous firearm. Finally, Grimm claims that the district court erred in finding him ineligible for the safety valve provision of the sentencing guidelines.

### A. Breach of plea agreement.

■ The parties agree that because plea agreements are contracts, this court reviews any ambiguity in such agreements de novo, as a question of law. *United States v. Williams*, 102 F.3d 923, 927 (7th Cir.1996). We must objectively review the language of the plea agreement and hold the government to the literal terms of the agreement. *Id.* The government is strictly bound to fulfill any express or implied promise made in exchange for a guilty plea contained in the plea agreement. *Id.*

Grimm claims that when he entered into the plea agreement, the government agreed to certain sentencing recommendations, and that the government breached the agreement when it withdrew some of these recommendations prior to sentencing. Specifically, Grimm argues that the government breached the plea agreement in two ways: First, by taking away its recommendation for acceptance of responsibility and, second, by raising the issue of his possession of a gun in connection with the charged offense after implicitly agreeing not to. We address each of Grimm's contentions in turn.

### 1) Acceptance of responsibility.

■ Paragraph six of the plea agreement provided:

The United States agrees to recommend that the defendant receive a three-level reduction in the sentencing guidelines for acceptance of responsibility. This recommendation is based upon facts currently known to the United States and is contingent upon the defendant accepting responsibility according to the factors set forth in USSG § 3E1.1. The United States is free to withdraw this recommendation if the defendant has previously engaged in any conduct which is unknown to the United States and is inconsistent with acceptance of responsibility, or if he engages in any conduct between the date of this plea agreement and the sentencing hearing which is inconsistent with acceptance of responsibility.

USSG § 3E1.1 provides a reduction in the defendant's offense level if he "clearly demonstrates acceptance of responsibility for his offense." The government withdrew its recommendation for acceptance of responsibility pursuant to USSG § 3E1.1, because it claimed that Grimm denied relevant conduct. Specifically, the government asserts that Grimm lied about the starting date of his association with Duran and lied about his association with Duran's ex-wife, Teresa Olayo.

Grimm told the government that he began his association with Duran in 1996. The government claims that it discovered, post plea agreement, that Grimm actually began working for Duran in 1995. This is based on the fact that Grimm told a government informant, Richard Canfield, in a taped conversation, that he drove to Tucson, met with Duran's sister and waited for a load of marijuana that never came, and that he "wasn't workin' for UAC then." Following the plea hearing, Grimm told the probation office that he was employed with Union Acceptance Corporation ("UAC") from May 1995 to August 1997. Thus, the government contends that it had "new evidence" that Grimm was associated with Duran since 1995, rather than 1996.

However, as Grimm argues, the government knew long before the date of the plea agreement that Grimm began working for UAC in May 1995. For instance, Grimm references a motion received by the United States Attorney's office in October 1997, and

placed into the record in this case, that detailed the fact that from "May 1995 to present—Mr. Grimm has been employed as a field investigator for Union Acceptance Corporation...." Moreover, the record shows that the government had the taped conversation between Grimm and Canfield long before the plea agreement was negotiated. Thus, the government had no new evidence that Grimm denied relevant conduct.

Since the acceptance of responsibility provision in the plea agreement was based on facts "currently known to the government" at the time it entered into the agreement, withdrawal of promises made in the agreement had to be based, as the government concedes in its brief, on "newly discovered evidence." As the government does not possess any newly discovered evidence that Grimm was associated with Duran as early as 1995, the government is estopped from withdrawing the recommendation for acceptance of responsibility based on Grimm's alleged misrepresentations concerning the start of his association with Duran.

The other reason provided by the government for withdrawing its recommendation for acceptance of responsibility is that Grimm falsely denied knowledge of Teresa Olayo's involvement in the marijuana operation. The government was anxious to learn about Olayo's role in the conspiracy and hoped Grimm would be able to provide information concerning her involvement. After entering into the plea agreement, the government claimed, and the district court agreed, that Grimm "repeatedly denied any knowledge of Teresa Olayo's involvement in the marijuana conspiracy," when in fact he knew more about Olayo's role in the conspiracy than he let on. The record does not bear out this conclusion.

As evidence of Grimm's lack of candor regarding Olayo's involvement, the government presented the transcript of a taped phone conversation between Duran and Olayo in which they discuss making arrangements for "Charlie," presumably Grimm, to pick up drugs from Olayo's house. The government claims that this conversation shows that Grimm had knowledge of Olayo's involvement in the conspiracy. However, all

that the conversation between Duran and Olayo establishes is that Olayo knew about Grimm's involvement in the conspiracy, not the other way around. Moreover, Grimm claims, and the government does not dispute, that he admitted from the beginning that on one occasion he picked up drugs from Olayo's house.

Similarly, the government cites as evidence of the defendant's false denial of relevant conduct a taped conversation between Grimm and informant Canfield. In this conversation, Canfield inquired about Duran and Olayo, asking, "You do business with both of 'em or just ... through him?" Grimm replied, "They still work together." Grimm also described the exterior of Olayo's house to Canfield. This, according to the government, proves that Grimm knew more about Olayo than he told the government. We cannot agree. As stated above, Grimm admitted picking up drugs from Olayo's house so his description of her house adds nothing. More importantly, Grimm's conversations with Canfield do not indicate that Grimm knew any more about Olayo's involvement than he told the authorities. He told the authorities that he did not know any specifics of her involvement in the conspiracy, and the government's evidence does not prove otherwise.

The government's protestations to the contrary, none of this evidence indicates that Grimm ever lied about Olayo's involvement, and even if it did, this evidence—like the evidence concerning the start date of Grimm's association with Duran—was known to the government at the time it entered into the plea agreement. The government would have been well within its rights to withdraw its offer of a plea at that point if it believed Grimm was being untruthful. However, none of this evidence was "newly discovered" after the parties entered into the plea agreement.

Application Note 1(a) to USSG § 3E1.1 provides that in determining whether a defendant should receive the acceptance of responsibility reduction:

 ... a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in

order to obtain a reduction.... A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. However a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a matter inconsistent with acceptance of responsibility.

Thus, Grimm had no duty to "come clean" on relevant conduct beyond the offense of conviction in order to qualify for this reduction. *See United States v. Brown*, 47 F.3d 198, 203 (7th Cir.1995). The government may have been disappointed that it could not elicit more information about the conspiracy or about Olayo's involvement from Grimm, but it should have considered this possibility when it entered into the plea agreement and agreed to recommend the reduction. In any event, its disappointment does not allow the government to renege on its end of the bargain.

■ Absent newly discovered evidence, the government was bound by its agreement to recommend the acceptance of responsibility reduction, especially in light of the fact that the evidence relied on by the government is entirely consistent with what Grimm told the government all along. Its failure to make the recommendation constitutes a breach of the plea agreement. When a prosecutor breaches a promise made in a plea agreement, the interests of justice are best served by remanding the case for specific performance or withdrawal of the guilty plea. *See United States v. D'Iguillont*, 979 F.2d 612, 614 (7th Cir.1992); *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Because Grimm does not ask to withdraw his guilty plea we hold that in light of the government's breach, the proper remedy is to vacate Grimm's sentence and remand for resentencing. ·

**2.** Paragraph seven of the plea agreement provided:

If prior to sentencing, the defendant truthfully provides to the government all information ·and evidence he has regarding his involvement

### 2) Gun possession.

■ Grimm also argues that the government breached the plea agreement by raising the issue of the gun found in his car when he was arrested after it had agreed to recommend the safety valve provision. This provision allows a two-level sentence reduction for defendants who meet certain statutory requirements, one of which is that the defendant did not possess a dangerous weapon in connection with the offense. USSG § 5C1.2(2). At the time of the plea hearing, the government took the position that Grimm did not use violence or credible threats of violence or possess a firearm or other dangerous weapon in connection with the offense. It acknowledged this position when it agreed to recommend the safety valve provision in paragraph seven of the plea agreement.[2]

Despite this promise, in its sentencing memorandum to the district court dated April 17, 1998, the government informed the court that a gun was found in Grimm's car when he was arrested and that this fact was overlooked by the prosecutors when they entered into the plea agreement. The government stated:

> There was a gun in this case. It was in the trunk of the defendant's vehicle at the time of his arrest. The prosecutors missed it. However obvious the gun issue is in this case, (and what could be more obvious than a drug dealer in possession of a firearm at the time of his arrest) the prosecutors missed it at the time of the plea and missed it when objecting to the PSR [presentence report].

The government told the court that it was "bound by its promise in the plea agreement" and claims that, despite calling the district court's attention to the gun, it still persisted in its recommendation of no gun enhancement at the sentencing hearing.

Grimm claims that the government's argument to the court was facetious and inflammatory and that the government, after rais-

in the offense or offenses that were part of the same course of conduct or common scheme or plan, the United States will recommend that the defendant qualifies for the safety valve provision as set forth in USSG § 5C1.2.

ing the issue of the gun enhancement, should have made a more complete effort to explain to the court why the presence of the gun should not have resulted in the gun enhancement or denial of the safety valve provision. Clearly, by raising the issue as it did, the government may have breached the spirit, if not the letter of the agreement. The government was bound by its promise to recommend the safety valve reduction, despite the presence of a gun in the case. Thus, the government had an obligation to fully inform the court why it believed that Grimm did not possess a weapon in connection with the offense, as this was the only way the government could meaningfully recommend the safety valve reduction. It is not clear from the record or the representations made in this court that the government adequately did so. However, because we are already remanding this case, we need only reiterate here that the government is bound by the promises it made in the plea agreement and the district court can further reflect upon the appropriateness of the safety valve reduction.

**B. Acceptance of responsibility enhancement.**

■ Grimm argues that the district court erred by denying him a three-level reduction for acceptance of responsibility because its determination that he denied relevant conduct was not based on any reliable information. He also claims that the district court erred in not correcting the sentence pursuant to his properly filed Rule 35(c) motion.

■ In order to qualify for a downward adjustment for acceptance of responsibility, a defendant must: (1) show that he clearly recognizes and affirmatively accepts responsibility for his conduct; (2) timely notify authorities of his intentions to enter a plea of guilty; and (3) truthfully admit the conduct comprising the offense of conviction and admit, or not falsely deny or frivolously contest, the relevant conduct as it relates to the offense of conviction. USSG § 3E1.1. If the defendant denies the conduct and the court determines it to be true, the defendant cannot then claim he has accepted responsibility

for his actions. *United States v. Akindele*, 84 F.3d 948, 957 (7th Cir.1996). The district court found that Grimm did not accept responsibility because he frivolously denied relevant conduct in continuously denying any association with Duran prior to April 1996.[3]

■ This court reviews the district court's factual determination of whether a defendant accepted responsibility for clear error, *United States v. Wetwattana*, 94 F.3d 280, 285 (7th Cir.1996), and gives great deference to the sentencing judge's application of the Sentencing Guidelines. *United States v. Kirkland*, 28 F.3d 49, 50 (7th Cir.1994). However, when a sentencing decision is made without foundation, it will be overturned on appeal. *United States v. McGuire*, 957 F.2d 310, 317 (7th Cir.1992); *United States v. Blas*, 947 F.2d 1320, 1330 (7th Cir.1991). .

■ The district court found that Grimm denied relevant conduct by lying about his association with Duran prior to 1996, but Grimm argues that the evidence presented on that issue is not reliable. When a district court bases a sentence on purported facts, such facts must have a sufficient indicia of reliability to support their probable accuracy. *United States v. Salinas*, 62 F.3d 855, 859 (7th Cir.1995). When the government alleges that a defendant engaged in additional conduct which is part of the same course of conduct or common scheme or plan as the offense of conviction, such additional conduct must be proven by reliable evidence. *United States v. Beler*, 20 F.3d 1428, 1432 (7th Cir.1994). In fact, the Commentary to USSG § 6A1.3 provides that "[u]nreliable allegations shall not be considered."

The chief evidence that Grimm lied about relevant conduct is the taped conversation with Canfield in which Grimm stated "I wasn't workin' at UAC then," referring to a trip he took to Arizona to meet Duran's sister and wait for a drug load. Grimm argues that this evidence is unreliable because there exists no corroborating evidence for this trip, such as records from airlines,

---

**3.** The district court did not base its finding on the government's allegation that Grimm lied about his knowledge of Olayo's involvement in the conspiracy.

car rental companies, phone calls or credit cards, while this type of corroborating evidence exists for the drug transactions from April 1996 forward. In *United States v. Ortiz*, 993 F.2d 204, 207 (10th Cir.1993), cited in the Commentary to USSG § 6A1.3, the Tenth Circuit reversed and remanded for resentencing due to the absence of any corroboration of the disputed evidence. Additionally, Grimm argues that the record shows that he never said he worked for Duran *prior to* working for UAC, but that he "was not workin' for UAC then." Grimm states that he was not working at UAC on a continued basis, but that he was given ad hoc assignments, and that weeks would go by when he had no assignments. During some of those weeks, Grimm made trips for Duran.

There is certainly evidence indicating that Grimm was forthcoming and deserving of the reduction, especially considering the government's initial promise to recommend the reduction. Had the government not breached the agreement by withdrawing its recommendation, perhaps the district court would have granted the reduction. Moreover, the evidence presented by the government on this issue appears slight and not particularly reliable. However, given the great deference with which we accord the district court in these matters, we are unwilling to hold as a matter of law that Grimm was entitled to the acceptance of responsibility reduction. We recognize that on remand the district court will have the opportunity to re-evaluate all of the evidence, including the government's recommendation in favor of the reduction, in reassessing its decision.

## C. Gun possession enhancement.

 USSG § 2D1.1(b)(1) requires a two-level enhancement if a defendant possessed a dangerous weapon during the commission of a drug offense unless it was clearly improbable that the weapon was connected with the offense. *United States v. Griffin*, 150 F.3d 778, 786 (7th Cir.1998). Guns found in close proximity to illegal drugs are presumptively considered to have been used in connection with the drug trafficking offense. *United States v. Adams*, 125 F.3d 586, 597 (7th Cir.1997). Although it is the govern-

ment's initial burden to prove by a preponderance of the evidence that the defendant possessed a weapon in a place where drugs were present, the burden of persuasion shifts to the defendant to demonstrate that it is clearly improbable that the weapon was connected with the drug offense. *United States v. Tyler*, 125 F.3d 1119, 1122 (7th Cir.1997). This is a factual determination made by the district court that will be reviewed only for plain error. *Id.*

 It is undisputed that Grimm had a gun in the trunk of his car when he was arrested on August 29, 1997, but that he did not have any drugs with him or in the car. Grimm had a permit to carry the gun in Arizona and he claims that he carried the gun because he was a licensed private investigator. Despite the government's implicit recognition to the contrary when it agreed to recommend the safety valve reduction, the district court found that the gun was connected to the drug conspiracy offense because Grimm used his car to deliver a load of marijuana to Wisconsin in July 1997 (though for all other deliveries he used a car provided by Duran or rental cars).

In imposing the enhancement, the district court relied on *United States v. Burns*, 128 F.3d 553, 556 (7th Cir.1997), where this court found that the defendant "possessed" a firearm for purposes of the enhancement because the firearm was found in a dresser drawer in the defendant's residence and drugs were found in the same dresser. The *Burns* court noted "when a firearm is discovered in close proximity to drugs, it is most likely that the two are connected." *Id.* Burns also purchased another gun during the time he was dealing drugs. *Id.* The court found that "under these circumstances, it strains credulity to suggest that it is 'clearly improbable' that the guns were connected with Burns' narcotics offenses." *Id.*

Grimm argues that his case is factually distinct from *Burns* because drugs were not found in the same place as the gun. Moreover, he argues that the burden of proving "clear improbability" does not shift to him until the government first meets its initial burden of proving by a preponderance of the evidence "that the defendant possessed a

weapon in a place where drugs were present." *Tyler*, 125 F.3d at 1122. Grimm claims that the government never satisfied this initial burden because the government never provided a nexus between the gun in the trunk and Grimm's drug runs.

While the gun was not found in a place where drugs were present, it was found in a car that was admittedly used on one occasion, approximately six weeks earlier, to transport a drug shipment. Thus, there was at least temporal proximity between the gun and the presence of drugs, and for this reason we find that it would not be "clearly improbable" for the district court to conclude that the weapon was used in connection with the offense. Other courts have upheld this enhancement on analogous facts. For instance, in *United States v. Pitts*, 6 F.3d 1366, 1373 (9th Cir.1993), the Ninth Circuit held that a gun found in the defendant's residence was possessed in connection with drug offenses that had occurred in his home as much as four months earlier, stating

> it was not clearly improbable that the gun was connected to the offenses of conviction … it is possible that [the defendant] possessed the gun found on September 27, 1991 on May 29, 1991 and July 31, 1991.

*See also United States v. Berrios*, 132 F.3d 834 (1st Cir.1998) (affirming enhancement where defendant never actually possessed or used gun, but he was seen leaving residence where gun was found, he made many phone calls to the residence, the residents were his co-conspirators, and the residence was center for drug operation); *United States v. Smith*, 131 F.3d 1392, 1400 (10th Cir.1997) (enhancement affirmed where no gun found at residence was registered to the defendant and his fingerprints were not found on any of the guns, but a weapon was found in a garage near the entrance to a drug lab).

We note, though, that the government initially conceded, at least implicitly, that the weapon was not used in connection with the offense when it agreed to recommend the safety valve provision. Additionally, a district court is not bound by a prosecutor's sentencing recommendations and has the discretion to impose sentence as it sees fit. We are confident that on remand the district court will take all relevant factors into consideration when resentencing Grimm.

## D. Safety valve provision.

 Finally, Grimm challenges the district court's decision not to grant him a sentence reduction based on "the safety valve provision," USSG § 5C1.2, which directs the court to disregard any statutory minimum sentence for defendants who meet certain criteria. This court reviews a district court's determination that a defendant is eligible for the safety valve reduction for clear error. *United States v. Thompson*, 76 F.3d 166, 171 (7th Cir.1996).

The district court found that Grimm did not qualify for the reduction because he failed to comply with two of the required criteria. The safety valve provision provides that a defendant is not eligible for the reduction if he possessed a firearm in connection with the offense, USSG § 5C1.2(2), or if he failed to truthfully provide to the government all information and evidence he had concerning the offense, USSG § 5C1.2(5). As discussed above, the district court concluded that Grimm possessed a gun in connection with his drug courier activities.

Grimm's arguments here parallel his arguments above. He claims that he participated fully with the government and told them everything he knew concerning the conspiracy and that he did not possess a gun in connection with the offense. It follows then that Grimm's challenge here depends on the district court's determination of those underlying issues on remand. Thus, if the district court finds on remand that Grimm possessed a gun in connection with the offense, then Grimm will be ineligible for the reduction. Similarly, if the court determines that Grimm failed to provide the government with all information known to him about the offense, he will not receive the safety valve reduction.

## III. CONCLUSION

For the reasons stated herein, we VACATE Grimm's sentence and REMAND this case for resentencing.