NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 24, 2007
Decided March 20, 2007

**Before**

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 06-2631

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff-Appellee,*<br><br>    *v.*<br><br>ALTO DILWORTH,<br>    *Defendant-Appellant.* | Appeal from the United States District Court for the Western District of Wisconsin.<br><br>No. 05 CR 180<br><br>Barbara B. Crabb,<br>*Chief Judge.* |

**O R D E R**

Alto Dilworth pleaded guilty to knowingly possessing crack cocaine with intent to distribute. At sentencing, the district court held him responsible for distributing the equivalent of 300 kilograms of marijuana and possessing a gun in connection with the offense, and sentenced him at the low end of the advisory sentencing guidelines range. Mr. Dilworth challenges the sentence, arguing that the presentence report ("PSR") relied too heavily on the guidelines to calculate his

sentence, and that the sentence is unreasonable because the district court did not properly exercise its discretion in its sentencing determination. We affirm.

Mr. Dilworth was stopped by Madison, Wisconsin police twice in March 2005 for suspected drug activity. He was first stopped by officers conducting a residence surveillance for suspected drug trafficking and was warned to stay away from the area. Later that month, a police officer stopped him after watching him make a suspected drug transaction. Mr. Dilworth was carrying four small packets of heroin, totaling 2.3 grams, which he planned to sell. He was arrested but not booked or charged. He refused to be an informant for police.

Several months later, in December 2005, Mr. Dilworth was arrested again. A government informant, Jaeson Shepard, told police that he and his girlfriend, Erin Van Epps, had been purchasing heroin from Mr. Dilworth since late 2004. Agents recorded a phone call in which Mr. Dilworth agreed to meet Shepard and to provide an "eightball" (1/8 ounce) of the "same thing" (heroin) Shepard had previously bought. Sent. Tr. at 16-17. With Shepard's assistance, agents staked out a Walgreen's parking lot, where they arrested Mr. Dilworth when he met Shepard to sell the drugs. In Mr. Dilworth's car, police found five bags of crack cocaine, weighing 2.35 grams, and three bags and three gem packs of heroin, totaling 10.74 grams, hidden in a fuse box in the engine compartment, as well as a loaded handgun concealed in a plastic container in the trunk.

Mr. Dilworth pleaded guilty to one count of knowingly possessing crack cocaine with intent to distribute under 18 U.S.C. § 841(a)(1). As a result of the plea agreement, the Government dropped a second count of the indictment charging Mr. Dilworth with possessing heroin with intent to distribute, and agreed to recommend that he receive a three-point reduction in his offense level for acceptance of responsibility.

The probation officer calculated a "conservative estimate" drug equivalency (converted from sales of heroin), based on Shepard's statements and statements by a confidential informant. Shepard had told officers that he had been buying from Mr. Dilworth since late 2004 or early 2005 and had bought 1/8 ounce of heroin from Mr. Dilworth two or three times a week since then. He also said that he had bought eight ounces of heroin from Mr. Dilworth 10-15 times and ten ounces on five or six occasions. The informant said that "JB," whom officers identified as Mr. Dilworth, brought in 200-500 grams of heroin per week from Chicago. The probation officer calculated the drug equivalency at 459 kilograms of marijuana, which corresponded to a base offense level of 28, *see* U.S.S.G. § 2D1.1(c)(6). Because Mr. Dilworth had a handgun in the trunk of his car at the time of his arrest, the probation officer recommended a two-level increase in Mr. Dilworth's base offense level. After a three-point adjustment for acceptance of responsibility, his offense level was 27,

which, when combined with his criminal history category of I, yielded a guidelines range of 70-87 months.

Before sentencing, Mr. Dilworth filed objections to the presentence report. He objected to the PSR "as a whole" for "treating the guidelines as presumptive, and in effect mandatory." Def.'s Obj. and Suggested Corrections to PSR 4-6. He also generally objected to the drug quantities, saying that he did not meet Shepard and Van Epps until July 2005, so he could not have sold to them before then. He objected to the two-point increase in his offense level for having a gun in connection with the offense, given the distance between the gun in the trunk and the drugs under the hood. Finally, he urged that a sentence of 12-18 months' imprisonment, apparently calculated on the basis of the drug amount he was carrying when arrested, was sufficient to punish him and protect the public because of his advancing age (35 at sentencing), steady work history, and his being "essentially a first offender." *Id.* at 6-10.

At the sentencing hearing, Mr. Dilworth disputed the drug quantities and any increase in offense level because of the gun in the trunk. The Government presented testimony from Van Epps confirming that she and Shepard had bought heroin from Mr. Dilworth several times a week since early 2005, probably March or April, and agreeing with the quantities Shepard told police they had purchased. Detective Linsmeier testified that the recorded phone conversation between Shepard and Mr. Dilworth suggested that the two had a previous relationship involving drug sales. Two people then testified that Mr. Dilworth did not meet Shepard and Van Epps until July of 2005, but Mr. Dilworth did not contest the frequency or sizes of the drug transactions he had with Shepard. Thus, the Government argued that, even if Mr. Dilworth had met them in July, he could be held responsible for two sales of 1/8 ounce per week, as well as the larger sales, from then until he was arrested in December, which would subject him to a base offense level of 26--the same as if Mr. Dilworth had met them in March or April of 2005. Mr. Dilworth's counsel asked for leniency, because Mr. Dilworth had been self-employed until his maintenance tools were stolen in late 2004, and he was not able to find another job.

The district court found that Van Epps' testimony was plausible, especially because it was corroborated by the statements of Shepard and the recorded conversation between Mr. Dilworth and Shepard that led to Mr. Dilworth's December arrest. The court calculated the drug amount for sentencing as "well past 250 grams," and in fact "well over 300 grams" of heroin. Sent. Tr. at 75. This amount was equivalent to at least 300 kilograms of marijuana--lower than that recommended in the PSR--yielding a base offense level of 26, *see* U.S.S.G. § 2D1.1(c)(7). The court then accepted the PSR's recommendation of a two-point increase for possession of the gun in relation to the offense, and, though finding it a

"close call," also subtracted the recommended three points for acceptance of responsibility. Sent. Tr. at 65, 85. Mr. Dilworth's resulting offense level was 25, with a criminal history category of I, yielding an advisory range of 57-71 months' imprisonment. The court acknowledged Mr. Dilworth's lack of criminal record, his upbringing, steady work history, and his recent difficulty in obtaining work, but found it a "big problem" that Mr. Dilworth refused to help police and kept dealing drugs after his first arrest. Sent. Tr. at 83-86. The court determined that a 57-month sentence best reflected the serious nature of the crime and protected the public.

On appeal, Mr. Dilworth first argues that the probation office violated the dictates of *United States v. Booker*, 543 U.S. 220 (2005), by preparing a PSR focused only on the sentencing guidelines without incorporating an analysis of the 18 U.S.C. § 3553(a) sentencing factors. Mr. Dilworth's argument is a bit difficult to pin down, but he seems to suggest that the PSR's reliance on the guidelines essentially renders them mandatory rather than advisory.

Mr. Dilworth misunderstands *Booker* and the function of the PSR. In *Booker*, the Supreme Court held that the sentencing guidelines were advisory, rather than mandatory. *Booker*, 543 U.S. at 244-47. A sentencing court must now consider the guidelines' recommended sentence but must also use its discretion and consider other factors relevant to fashioning an appropriate sentence, *see* 18 U.S.C. § 3553(a). *United States v. Mykytiuk*, 415 F.3d 606, 607-08 (7th Cir. 2005).

*Booker* thus dealt only with a district court's sentencing procedure; Rule of Criminal Procedure 32 governs the PSR, which aids the sentencing court in its sentencing analysis. The PSR must include: details of the offense, a thorough personal and criminal history of the defendant, mitigating or aggravating information that could affect the guidelines sentencing range, and any circumstances of the defendant's behavior important to a sentencing or treatment decision. Fed. R. Crim. P. 32(d). As long as the PSR follows the requirements of Rule 32, it gives the sentencing court the information it needs to conduct its § 3553(a) analysis. Here, the PSR contained the appropriate information. In any event, we also note that the district court rejected the guidelines calculation recommended in the PSR (70-87 months) and arrived at an even lower one (57-71 months).

Mr. Dilworth next suggests, without developing the argument, that the district court incorrectly calculated his guidelines range. First, he implies that the district court erred in basing its calculations of drug amounts for sentencing on the unreliable testimony of Van Epps and an unnamed government informant. But the court acted within its discretion when it credited Van Epps' testimony on drug amounts, especially because it found that telephone records and the taped

telephone conversation between Shepard and Mr. Dilworth corroborated their relationship. *See United States v. White*, 360 F.3d 718, 720 (7th Cir. 2004). We do not second-guess the credibility determinations of the district court, *see id.*, and Mr. Dilworth has suggested nothing that justifies finding that the district court committed clear error in crediting Van Epps' testimony.

Second, Mr. Dilworth suggests that the district court improperly applied a two-point increase in his base offense level for use of a firearm in connection with the crime, because the gun was located at the opposite end of the car far from the drugs. Mr. Dilworth had to show, however, that it was "clearly improbable" that the gun found near the drugs was used in relation to his drug offense. *United States v. Grimm*, 170 F.3d 760, 767-68 (7th Cir. 1999). We have upheld the application of § 2D1.1(b)(1) in other situations in which a gun was not immediately accessible from the location of the drugs, *see id.* (affirming district court's finding that it was not "clearly improbable" gun found in defendant's car trunk was used in relation to drug delivery for which car was used six weeks earlier)*; United States v. Bjorkman*, 270 F.3d 482, 494 (7th Cir. 2001) (upholding increase where guns were found in gun locker inside drug "stash house"), and the district court was correct to apply the increase here.

Mr. Dilworth next argues that his sentence is unreasonable, because it is longer than necessary to meet the sentencing factors of § 3553(a). He seems to argue that the court disregarded the § 3553(a) factors and relied exclusively on the sentencing guidelines. However, the court did consider the § 3553(a) sentencing factors, noting for instance that Mr. Dilworth had no prior criminal history, *see* § 3553(a)(1), and that it was imposing a 57-month sentence to best reflect the seriousness of the offense, *see* § 3553(a)(2)(A), deter Mr. Dilworth from criminal conduct, *see* § 3553(a)(2)(B), and protect the public, *see* § 3553(a)(2)(C). The court said, "[a]lthough it's troubling that you were not deterred after your first arrest when you had the opportunity to cooperate with authorities and rejected this alternative, I am persuaded that a sentence of imprisonment at the low end of the guideline range will be sufficient to reflect the serious nature of your criminal activity and protect the community." Sent. Tr. at 86. We are therefore satisfied that the court adequately considered the § 3553(a) sentencing factors.

In a related argument, Mr. Dilworth also contends that the district court failed to address mitigating factors such as his being "essentially a first offender" with a steady work history who was unlikely to commit further crimes. Appellant's Br. 18-20. The district court, however, found facts that undermined his claims that he was a first-time offender and unlikely to commit further crimes. The court noted, for instance, that although Mr. Dilworth had no criminal history, he "had a chance" to turn his conduct around after he was arrested in March; however, he not only refused to help police but also continued selling drugs. Sent. Tr. at 84, 86.

## **Conclusion**

The district court committed no error in the sentencing of the defendant. Accordingly, the judgment of the district court is affirmed.

AFFIRMED