In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-1828

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

WILLIAM H. RANDLE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 95 CR 310—**James B. Zagel**, *Judge.*

ARGUED JANUARY 13, 2003—DECIDED APRIL 1, 2003

Before POSNER, KANNE, and DIANE P. WOOD, *Circuit Judges.*

KANNE, *Circuit Judge.* William H. Randle appeals that aspect of his sentence ordering restitution to three victims of his fraudulent bankruptcy scheme. Because we find that the district court was without statutory authority to order restitution with respect to two of the victims, we vacate that portion of the restitution ordered and remand the case for resentencing.

## I. HISTORY

The sentence at issue in this appeal was imposed pursuant to Randle's conviction on one count of bankruptcy

fraud. This fraud was perpetrated as part of a scheme in which Randle would approach homeowners facing foreclosure on their mortgages, promising the owners that he would use his "special knowledge and expertise" in the areas of bankruptcy and real estate to halt the foreclosure sales of their homes. This "special knowledge and expertise" apparently amounted to preparing and filing fraudulent Chapter 13 bankruptcy petitions on an owner's behalf in order to trigger the automatic stay of foreclosure proceedings granted to bankruptcy petitioners.

Randle would review the public notices of pending foreclosure sales and mail letters to distressed homeowners advising them of his ability to stop a sale. In return for a fee, Randle would have willing homeowners sign blank Bankruptcy Petitions, Schedules, and Plans of Reorganization, which he would then file as *pro se* proceedings. These petitions concealed Randle's role in preparing them and contained false information intended solely to procure a postponement of the foreclosure sale.

The government eventually uncovered the scheme and charged Randle in a four-count indictment. The first three counts alleged mail fraud in violation of 18 U.S.C. § 1341. The final count alleged bankruptcy fraud in violation of 18 U.S.C. §152. Each count of mail fraud involved mailings relating to three separate homeowners facing foreclosure.[1] Count One involved mail fraud stemming from Randle's relationship with Odell Terry. Terry was charged $677 in return for the preparation and filing of a bankruptcy petition, solely for the purpose of delaying the foreclosure sale of his home. Count Two involved mail fraud with respect to similar work done on behalf of M.C. Gibson, who paid $6,850.00 for the advertised services.

---

[1] In two of the three mail frauds—those involving Odell Terry and M.C. Gibson—Randle was aided by Emanuel Belloumini.

Count Three involved mail fraud arising from services performed for Christina Luna-Perez, who was charged $1,160.00 for Randle's bankruptcy filing.

Count Four of the indictment charged Randle with bankruptcy fraud solely with respect to the filings he prepared for Ms. Luna-Perez. Specifically, that count alleged that on March 22, 1994, Randle fraudulently filed a Statement of Financial Affairs in the name of Ms. Luna-Perez that falsely claimed no payment for debt or bankruptcy counseling had been paid within the past year.

Pursuant to a written plea agreement, Randle pleaded guilty solely to Count Four. Among its provisions, the plea agreement made four references to restitution. First, it stated that Randle "admits the following facts: . . . Defendant fraudulently obtained (or caused a loss [of]) . . . a total of $8,687 from three different debtors." (R. at 84-4.) Second, the agreement noted that for purposes of determining Randle's base offense level under the federal sentencing guidelines, "the amount of loss to the victims resulting from the offense of conviction and relevant conduct was $8,687, which is more than $5,000.00, but not more than $10,000.00." (R. at 84-4.) Third, the agreement recited that Randle understood the maximum penalties he faced under the statute, including imprisonment and a fine, "as well as any restitution ordered by the Court." (R. at 84-6.) Finally, the agreement stated that "Defendant will cooperate fully with the United States Attorney's Office and the United States Probation Office in their determination of the appropriate amount of restitution to be ordered by the Court." (R. at 84-8.)

Randle's presentence report ("PSR") recommended that he be sentenced under the federal sentencing guidelines according to a base offense level of 8 and a criminal history category of I. The base offense level was reached in part by reference to the total amount of loss involved in the offense: under sentencing guideline § 2B1.1, if the of-

fense caused a loss exceeding $5,000, but not more than $10,000, then the base offense level is increased by two levels. U.S.S.G. § 2B1.1(b)(1)(B) (2003). The PSR, relying on the relevant conduct guideline § 1B1.3(a)(2) to take into account unconvicted conduct, found the total loss to be $8,687, and after several other adjustments not relevant here, arrived at an ultimate base offense level of eight. These calculations correspond to a sentence range of zero to six months imprisonment. In addition, the PSR determined that restitution in the amount of $8,687 was appropriate. Randle filed two Sentencing Memoranda raising objections to various aspects of the PSR, but neither memorandum objected to the PSR's calculation of an appropriate restitution amount.

At Randle's sentencing hearing, the district court questioned the parties about restitution for the victims of Randle's fraud. When the court asked where the restitution money would go, the government listed the three victims of Randle's scheme and noted the amounts paid by each. Defense counsel's only response was to emphasize that Randle's colleague Belloumini would be jointly and severally liable for any restitution amount.

After some additional questioning, the district court sentenced Randle to two months imprisonment followed by a term of supervised release, a fine of $100, and restitution in the amount of $8,687. The court then noted that the restitution was to be paid to "the individuals as set forth in the presentence investigation report." (Sent. Tr. at 14.) Randle made no objection, but now appeals that part of his sentence ordering restitution to victims Terry and Gibson.

## II. ANALYSIS

Because Randle did not raise any objection to the restitution order at his sentencing, his challenge is reviewed here

for plain error. *United States v. Noble*, 246 F.3d 946, 955 (7th Cir. 2001). "To justify a finding of plain error, 'there must be an "error" that is "plain" and that "affects substantial rights." ' " *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). Even then, a court maintains discretion to decide whether to notice and remedy the error, the exercise of which depends on whether the error " 'seriously affects the fairness, integrity or public reputation of judicial proceedings.' " *Id.* (quoting *Olano*, 507 U.S. at 732).

Randle argues, and the government at least partially concedes, that the district court committed an error in calculating its restitution order, as it had no authority to order restitution with respect to the two victims not affected by the bankruptcy fraud to which Randle pleaded guilty. According to Randle, neither Odell Terry nor M.C. Gibson qualify as "victims" under the statutory language authorizing restitution, as interpreted by the Supreme Court and this Court. The government agrees that the district court erred by ordering restitution on this basis. In addition, Randle argues that he never agreed, as part of his plea agreement, to pay these victims restitution. The government contends that it was clearly Randle's "intention" to pay them, whether the explicit terms of the written plea agreement say so or not, and this provided the district court with the authority to make its order.

We begin by noting that "[f]ederal courts possess no inherent authority to order restitution, and may do so only as explicitly empowered by statute." *United States v. Hensley*, 91 F.3d 274, 276 (1st Cir. 1996) (citation omitted). Congress has, however, provided statutory authorization for court-ordered restitution in certain circumstances. For example, the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663, authorizes a court to order "in addition to or . . . in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of such offense." 18 U.S.C. § 3663(a)(1)(A) (2003).

The Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, requires that "the court *shall* order" restitution to the victims of certain specified offenses, including those which result in "an identifiable victim or victims [who] has suffered . . . pecuniary loss." 18 U.S.C. § 3663A(a)(1) & (c)(1)(B) (2003) (emphasis added).[2]

These two statutory provisions authorize federal courts to order offenders to pay restitution to "victims" of certain crimes. Both the VWPA and the MVRA define a "victim" either as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered" or "in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. §§ 3663(a)(2) & 3663A(a)(2). In addition, courts are authorized to order restitution to persons other than a "victim" only "if agreed to by the parties in a plea agreement." 18 U.S.C. § 3663A(a)(3).

Court decisions reviewing awards of restitution to "victims" under the VWPA and MVRA have generally required a direct nexus between the offense of conviction and the

---

[2]  The provisions of the VWPA and the MVRA are nearly identical in authorizing an award of restitution. The primary difference between the two statutes is that for certain offenses specified in the MVRA, an award of restitution is mandatory and is calculated by looking to the victim's loss, without regard to the defendant's ability to pay an award. *See United States v. McIntosh*, 198 F.3d 995, 1003-04 (7th Cir. 2000). In this appeal, Randle does not challenge the determination that bankruptcy fraud falls within the list of offenses to which the MVRA is applicable. *See* 18 U.S.C. § 3663A(c)(1). Whether a restitution award is authorized in this case is thus appropriately analyzed under the provisions of the MVRA, rather than the VWPA.

loss being remedied. In *Hughey v. United States*, the Supreme Court interpreted the VWPA to authorize a restitution award only with respect to that loss caused by "the specific conduct that is the basis of the offense of conviction." 495 U.S. 411, 413 (1990).[3] Thus, under *Hughey*, both the amount of the restitution award and the persons to whom such an award may be directed are limited by the circumstances of the offense for which the defendant has been *convicted*.

In *United States v. Braslawsky*, this Court applied the rule of *Hughey* and reversed a restitution order under the VWPA that included an amount of loss not directly attributable to the conduct for which the defendant was convicted. 951 F.2d 149, 152 (7th Cir. 1991). Under this interpretation, charged but unconvicted conduct cannot form the basis for an award of restitution. In fact, in *United States v. Menza*, we noted that, under the VWPA, "Congress intended restitution to be precisely tied to the loss caused by the offence of conviction. Examination of the conduct constituting the commission of a crime only involves consideration of the conduct to which the defendant pled guilty and nothing else." 137 F.3d 533, 537 (7th Cir. 1998) (citations omitted); *see also United States v. Scott*, 250 F.3d 550, 553 (7th Cir. 2001) (noting that "relevant conduct" may not be the basis of a restitution award under the MVRA unless it is also "charged [convicted] conduct" or covered in a plea agreement).

From the statutory language and the court interpretations of that language, we distill three situations in which restitution is authorized under the MVRA: first, to a victim directly harmed by the offender's "*specific con-*

---

[3]  Because of the similarity of the statutory language in the VWPA and MVRA, court decisions interpreting the language of the VWPA are helpful in construing the language of the MVRA.

*duct* that is the basis of the offense of conviction"; second, to a victim who is directly harmed by the offender's conduct in the course of committing an offense that involves "*as an element* a scheme, conspiracy, or pattern"; third, if the parties so agreed in a plea agreement.

Odell Terry and M.C. Gibson were not directly harmed by the bankruptcy fraud perpetrated by Randle with regard to Ms. Luna-Perez—the basis for Court Four of the indictment.[4] In addition, the government has conceded that proof of a scheme, conspiracy or pattern is not an element of the offense of bankruptcy fraud.[5] *Cf. United States v. Bennett*, 943 F.2d 738, 740 & n.1 (7th Cir. 1991) (discussing the difference between offenses which require as an element proof of a scheme and those which do not). Thus, the district court was without authority under § 3663A(a)(2) to award restitution to either Terry or Gib-

_____

[4] We need make mention here that, as the government noted in its brief, bankruptcy fraud under § 152 is generally thought to involve fraud on the court, the debtor's creditors, and the bankruptcy trustee. *See, e.g.*, *United States v. Lowell*, 256 F.3d 463, 465-66 (7th Cir. 2000). Thus, there is some question as to whether Ms. Luna-Perez was "directly and proximately harmed" for purposes of § 3663A by Randle's violation of § 152. (Indeed, because the fraudulent filings prepared by Randle led to an automatic stay of the foreclosure proceedings on Luna-Perez's home, she may more appropriately be thought of as a beneficiary of that fraud.) Randle, however, does not challenge the restitution award to Ms. Luna-Perez, so we do not reach that question.

[5] Section 152 provides in part: "A person who . . . knowingly and fraudulently makes a false declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28 [unsworn declarations under penalty of perjury], in or in relation to any case under title 11 . . . shall be fined under this title, imprisoned not more than 5 years, or both." 18 U.S.C. § 152 (2003).

son, as neither qualified as a "victim" under the definition provided in the MVRA.

The only other basis on which the district court could have awarded restitution to these two individuals would be if Randle had agreed to pay such restitution in his plea agreement with the government, as provided in § 3663A(a)(3). As noted earlier, the written plea agreement makes four references to restitution; none of these references, however, explicitly states Randle's agreement to pay restitution to Terry or Gibson. Two of those references speak only of "any restitution ordered by the Court" and "the appropriate amount of restitution to be ordered by the Court." (R. at 84-6 & 84-8.) Certainly such references do not express Randle's intention to repay each of the victims; they could just as easily refer to a restitution award to Ms. Luna-Perez alone. The remaining two references are more specific: the first notes that the total loss resulted from "three different debtors," while the second speaks of several "victims"—both note the aggregate amount of loss suffered by the three debtors. (R. at 84-4.) While the government suggests that these references indicate an intention to pay restitution in the full amount of the loss, they are just as easily seen as a necessary factor for the calculation of Randle's base offense level under the federal sentencing guidelines. *See* U.S.S.G. § 2B1.1(b) (providing for increases in the offense level based on total amount of loss involved). In any event, none of these four references are specific enough to qualify as an agreement by Randle to pay restitution to each of the three victims of his scheme.

Turning to an argument of "implied agreement," the government strenuously argues that it was the "intention of both parties" that Randle would pay restitution to each of the three victims, despite the failure to memorialize such an intention in the written plea agreement. The government asserts that, taken together, the refer-

ences to restitution in the written agreement, the failure to object to the recommendation of restitution in the PSR, and Randle's actions at the sentencing hearing (most notably his failure to object to the characterization of the restitution agreed upon), clearly evidence this "intention" to pay restitution to each victim.

The bottom line, however, is that the written plea agreement says nothing about Randle agreeing to pay restitution to specific persons, and we decline to imply such an agreement. Plea agreements are contracts and must be interpreted according to principles of contract law. *United States v. Williams*, 102 F.3d 923, 926-27 (7th Cir. 1996). To be valid, a plea agreement must encompass "a meeting of the minds on all of its essential terms." *United States v. Barnes*, 83 F.3d 934, 938 (7th Cir. 1996). We hesitate to find such a meeting of the minds as to the amount of restitution agreed upon based on the scanty evidence present here. The better approach, it seems to us, is to rely on what the parties have included in their written contract, avoiding the need to engage in close interpretive questions of ambiguous discussions.[6] The absence of any explicit language in the written plea agreement incorporating an agreement on restitution to persons beyond the victim precludes the invocation of § 3663A(a)(3) to authorize restitution to Terry and Gibson.

In awarding restitution to Odell Terry and M.C. Gibson the district court committed error, and that error was plain (we note that the error was apparently obvious to the government, which admits in its brief that Randle "correctly identifie[d] an error in the restitution order"). In requiring Randle to pay several thousand dollars in restitu-

---

[6] Indeed, the government concedes that the MVRA requires that plea agreements "expressly" state a defendant's agreement to pay restitution to victims beyond the offense of conviction.

tion, without a statutory basis for doing so, the error affects Randle's substantial rights.

Given that the three requirements for a finding of plain error have been met, we must further determine whether we will exercise our discretion to correct the error. Such discretion should be exercised to avoid any harm to "the fairness, integrity or public reputation of judicial proceedings." *Noble*, 246 F.3d at 955. As in this case, calculating and providing for restitution can be difficult to sort out. Determining who are victims and the amount of loss are often not easy tasks for the district court. However, in this case, the district court acted where no statutory authority existed. Therefore, to ensure the fairness of the judicial process, we exercise our discretion to remedy the error.

## III.  CONCLUSION

Because the district court did not have the statutory authority to impose restitution with respect to Odell Terry and M.C. Gibson, that portion of the court's sentence requiring restitution be paid to those two individuals is hereby VACATED; and this case is REMANDED for resentencing in accordance herewith.

POSNER, *Circuit Judge*, dissenting. The defendant defrauded three individuals, Terry, Gibson, and Luna-Perez, but was permitted to plead guilty to only bankruptcy fraud and only against the last of these. The plea agreement states that the defendant admits to having defrauded the trio of a total of $8,687 and that he under-

stands that his plea subjects him to "any restitution ordered by the Court" and that he agrees to cooperate with the U.S. Attorney's office and the probation service "in their determination of the appropriate amount of restitution to be ordered by the Court." The district judge sentenced the defendant to 60 days in jail and—pursuant to the recommendation of the probation service and without objection by the defendant or his lawyer—ordered the defendant to pay restitution to his three victims in the total amount of $8,687 ($677 to Terry, $6,850 to Gibson, and $1,160 to Luna-Perez). However, the parties and the district judge overlooked 18 U.S.C. § 3663A(a)(3), which permits ordering a convicted defendant to make restitution to persons other than the victims of the offense for which he was convicted (here, bankruptcy fraud against Luna-Perez) if he agrees to do so in the plea agreement, but, by implication, not otherwise.

The defendant argues that the text of the plea agreement ties restitution to the offense of conviction by stating that the "defendant understands *the* count to which he will plead guilty carries [various penalties], as well as any restitution ordered by the Court" (emphasis added). Although "any restitution ordered by the Court" sounds expansive, the defendant argues that the most natural interpretation of the quoted clause in its entirety is that restitution is one part of the penalty for "the count," and is limited to the maximum restitution for the count.

Extrinsic evidence demonstrates with unusual clarity that the parties nevertheless meant to agree to restitution for all victims. This was the basis for their bargain and the only number used at the sentencing hearing. As in *United States v. Schrimsher*, 58 F.3d 608, 609-10 (11th Cir. 1995) (per curiam), and *United States v. Koeberlein*, 161 F.3d 946, 951 (6th Cir. 1998), cases comparable to this, no one objected to or sought clarification of the district court's identical understanding. It is no objection that

the parties were probably laboring under a mistake of law, that they thought the statute required restitution to all victims for conviction on the single count, perhaps on a mistaken analogy to the operation of relevant conduct in sentencing. Their mistake strengthens my interpretation because it reconciles the parties' intentions with the troublesome clause: they thought that *the* count and hence the clause entailed the broader restitution.

Even if my interpretation of the plea agreement is wrong, there was no objection at sentencing and therefore the question is whether the error was plain and if so whether we should exercise our discretion to notice (that is, reverse on the basis of) a plain error. (The error was not jurisdictional; section 3663A(a)(3) is just a statute of frauds for restitution orders.) Since it is a close interpretive question, the error was not plain in the sense either of being apparent to anyone knowledgeable about the relevant law ("obvious," as the cases say), *United States v. Frady*, 456 U.S. 152, 163 and n. 13 (1982), or (what amounts as a practical matter to the same thing) of being determinable with certainty to be an error, *United States v. Caputo*, 978 F.2d 972, 974–75 (7th Cir. 1992), as opposed to being subtle or (what again is usually the same thing) debatable. And it was not plain in the further sense, essential to invoke the doctrine of plain error, that it was prejudicial, in the sense of likely to have made a difference in the outcome. *Id.*; *United States v. Galbraith*, 200 F.3d 1006, 1013 (7th Cir. 2000). We must ask what would have happened had the judge at the sentencing hearing realized that the plea agreement did not contain a promise to pay restitution to the other victims. He would have rejected the agreement and told the parties to go back to the drawing board, and the parties would then have agreed expressly that the defendant would pay restitution to the other victims. For we know that that is the deal that the defendant agreed to, even if it wasn't properly memorialized.

But if this is wrong too, still the question whether to notice a plain error is one addressed to the discretion of the reviewing court, as the majority opinion acknowledges. *United States v. Olano*, 507 U.S. 725, 735–37 (1993); *United States v. Trennell*, 290 F.3d 881, 887 (7th Cir. 2002); *United States v. Ross*, 77 F.3d 1525, 1538 (7th Cir. 1996); *United States v. Zillgitt*, 286 F.3d 128, 140–41 (2d Cir. 2002). At first glance this seems paradoxical, for how could an error be sufficiently "harmless" to be excused when by definition it was prejudicial? The answer is that it may be prejudicial in the sense that it requires a different outcome, yet harmless in the sense that when the case is remanded and the error corrected the outcome will again be the same. This is such a case. The government will not allow Randle to plead guilty unless he agrees to make restitution to all three of his victims, and he will readily agree to that since (1) otherwise he will face a longer jail term, for remember that the district court sentenced him to only 60 days in jail and unless he is ordered to pay restitution to the other two victims the total restitution that he will be ordered to pay will be a derisory $1,100; and (2) as he is unlikely ever to come up with the money required to make restitution to his victims, the "cost" to him of agreeing is slight. Randle would not prefer more jail time to being ordered to pay additional restitution, which he probably cannot do anyway, and so it is hard to see why "justice" requires sending this case back. I do not even understand why he appealed, as I do not see how he is made better off by prevailing. Randle "appears to believe that he can have the benefits of the plea agreement (four counts dismissed, reduced time in prison) without the detriments. That's not an option. The whole plea agreement stands, or the whole thing falls." *United States v. Peterson*, 268 F.3d 533 (7th Cir. 2001). If it falls, Randle will probably be worse off, and is very unlikely to be better off. The reversal is therefore pointless, as well as erroneous.

No. 02-1828                                                    15

A true Copy:

    Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*

USCA-02-C-0072—4-1-03