# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 02-3144

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

ANTONIO DONABY,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Illinois.
No. 01 CR 30103—**William D. Stiehl**, *Judge.*

_____

ARGUED SEPTEMBER 8, 2003—NOVEMBER 21, 2003

_____


Before KANNE, ROVNER, and DIANE P. WOOD, *Circuit Judges.*

KANNE, *Circuit Judge.* On January 28, 2002, Antonio Donaby was found guilty of bank robbery, in violation of 18 U.S.C. § 2113, and use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924. Donaby does not challenge the convictions.[1] Rather, he raises two issues concerning his sentence. First, Donaby asserts that it was improper for the district court to include the repair cost of the stolen getaway vehicle used in the robbery to increase the loss assessed under the Sentencing Guidelines, thereby increasing his relevant offense level. Second, Donaby argues

_____

[1] A direct appeal claiming ineffective assistance of counsel was withdrawn by Donaby at oral argument.

that the lower court erred in awarding 18 U.S.C. § 3663A restitution for damage to a police car involved in the chase that followed the robbery. We affirm the district court on both rulings.

## I. History

Antonio Donaby participated in the planning and execution of a bank robbery. Donaby and a friend, Joe Wingate, visited the First Federal Savings Bank of Mascoutah (Illinois), New Baden branch, on June 12, 2001. Each took a turn inspecting the interior of the bank. While returning to their homes in East St. Louis, Wingate agreed to take part in the robbery as a driver. Donaby and Wingate recruited two more friends to participate, Matthew Thomas and Freddie Bledsoe.

The first attempt to rob the bank was aborted as the group of men arrived too late in the morning to avoid customers. Donaby and the rest agreed to postpone the robbery for one week. In the interim, they took several steps to improve their chances of success. On June 20, the men stole a white mini-van from Westport Dodge in St. Louis, Missouri ("Westport"). This van was used as the primary getaway vehicle during the robbery. On the evening of June 24, the men gathered at the residence of Joe Wingate to review the plan and to make final arrangements. They also recruited Joe's brother, Tyrone Wingate, to serve as a third driver so that several vehicle transfers could be used to throw a potential police pursuit off course.

Donaby and his friends arrived at the bank on June 25, at 8:50 a.m. Only two men entered the bank. Donaby, dressed as a masked construction worker, and Thomas, dressed in women's clothing, brandished weapons and screamed vulgarities at the bank employees. The frightened employees cooperated. By 9:00 a.m., Donaby and Thomas exited the bank with $47,965.

The duo jumped into the stolen white van that was parked in front of the bank. Off-duty Police Chief Jim Arrington, who happened to enter the bank as the robbery was ending, immediately pursued the white van in what quickly became a high-speed chase. Arrington lost sight of the van when Tyrone Wingate, driving one of the getaway cars, ran interference for the van by cutting Arrington off and slowing down on a narrow two-lane road. Officer Joshua Donovan, of the Village of Shiloh Police Department ("Shiloh"), responded to an emergency broadcast identifying the white van and spotted the fleeing van within minutes.

The speed of the pursuit exceeded one hundred miles per hour, eventually reaching approximately one hundred and twenty miles per hour on Interstate 64. Through traffic and construction zones in southern Illinois cities, the van maintained speeds in excess of sixty miles per hour. While Officer Donovan and other police officers continued the chase, the Illinois State Police deployed "stop sticks"[2] to bring the chase to an end. This tactic proved successful, and the van came to a halt; the police apprehended Donaby as he fled on foot.

The authorities returned the damaged white van to Westport. Westport submitted an itemized list of necessary repairs in the amount of $4689.85 to their insurer, that, in addition to the $500 deductible, represented the extent of damage to the van. The van itself was valued at $34,445. Shiloh suffered $526.14 in damages to the vehicle driven by Officer Donovan in his pursuit of the white van.

---

[2] A "stop stick" is a device stretching nine feet across a standard twelve foot traffic lane that employs hollow nails embedded in styrofoam. As a car crosses the "stick," the nails puncture the tires in such a way that a slow leak develops. Flat tires result, but without the dangerous effects of a sudden blowout. (Tr. Vol. 3 at 16-18, 30.)

At trial, the government presented testimony from the bank employees, the law enforcement agents involved in the pursuit and investigation, and several of the men involved in the robbery. Based on this evidence, a jury convicted Donaby of bank robbery and use of a firearm during a crime of violence.

At sentencing, the district court relied on the presentence investigation report ("PSR") for the findings that the cost to repair the van was $5189.85 and the amount of money stolen from the bank was $47,965. The lower court added these two figures in a calculation made under the Sentencing Guidelines to reach a total loss exceeding the threshold mark of $50,000, thereby affecting Donaby's sentencing offense level. The lower court again relied on the PSR to award 18 U.S.C. § 3663A restitution payments to the bank, the bank's insurer, the bank's manager, and Shiloh in the amount of $526.14 for the damage to their vehicle.

## II. Analysis

Two issues of law are before this Court. First, Donaby asserts that it is improper under the Sentencing Guidelines to include the stolen vehicle damage in calculating "loss" to increase his sentencing level. Donaby asks for a reversal of his sentencing level determination, and a remand to the district court for a reassessment of the appropriate sentence.[3] Second, Donaby argues that it is beyond the statutory authority of the federal courts to award restitution for

---

[3] Donaby raises this issue despite his recognition that even if we reduced his offense level through reversal on this issue, his ultimate sentence of 144 months would still be within the acceptable range for his adjusted offense level and criminal history. Thus, the district court could reimpose precisely the same sentence on remand.

damage that occurred after the completion of the required elements of the crime for which he was convicted. He asks for a reversal of the restitution award to Shiloh.

Questions of law are reviewed de novo. *United States v. Martinez-Carillo*, 250 F.3d 1101, 1103 (7th Cir. 2001). Since these issues were not raised at the sentencing hearing, however, the plain error standard applies. *United States v. McIntosh*, 198 F.3d 995, 1003 (7th Cir. 2000); *United States v. Maggi*, 44 F.3d 478, 484 (7th Cir. 1995). Under this standard, we must determine "(1) whether there was error at all, (2) if so, whether it was plain, (3) whether the error affected [Donaby's] substantial rights, and (4) whether it seriously affected the fairness, integrity, or public reputation of the proceedings." *United States v. Robinson*, 250 F.3d 527, 529 (7th Cir. 2001). Because the trial court properly applied the law on both issues, there was no error, and it is only necessary to pursue the first inquiry of the plain error test.

## A.  The Sentencing Offense Level Enhancement

In conjunction with a criminal history assessment, the offense level sets the acceptable range of punishment for any particular federal crime under the United States Sentencing Guidelines. As the offense level rises, so too does the range of appropriate punishment for a convicted defendant. A robbery conviction entails the assignment of a "Base Offense Level" of twenty under the Guidelines. U.S.S.G. § 2B3.1(a). For robbery, there are seven "Specific Offense Characteristics," each of which adds offense levels to the base number of twenty. U.S.S.G. § 2B3.1. Although Donaby's base offense level was increased because of several offense characteristics, Donaby only challenges the application of the specific offense characteristic involving the amount of "loss" attributed to the robbery. That offense characteristic reads:

(7) If the loss exceeded $10,000, increase the offense level as follows:

| <u>Loss</u> (Apply the Greatest): | <u>Increase in Level</u> |
|---|---|
| (A) $10,000 or less . . . . . . . . . . . . . . . . | no increase |
| (B) More than $10,000 . . . . . . . . . . . . . . . | Add **1** |
| (C) More than $50,000 . . . . . . . . . . . . . . . | Add **2** |

U.S.S.G. § 2B3.1(b)(7) (emphasis in original). In the "Application Notes" to U.S.S.G. § 2B3.1, "loss" is defined as "the value of the property taken, damaged, or destroyed." U.S.S.G. § 2B3.1, cmt. n.3 (2003).

The question presented by Donaby is whether the damage suffered by a stolen getaway car is properly considered "loss" under § 2B3.1(b)(7). If the damage to the white van is included as "loss," Donaby's offense level was properly increased by two under § 2B3.1(b)(7) because the sum of the cash stolen from the bank and the damage to the stolen van exceeded $50,000. If the damage to the van should not be included, then the lower court should only have increased the offense level by one under § 2B3.1(b)(7).

Although this is a question of first impression in the Seventh Circuit, an apparent circuit split has arisen. The Eighth Circuit allows the value of a stolen vehicle used during a robbery to be included as "loss." *United States v. Powell*, 283 F.3d 946 (8th Cir. 2002). The First Circuit maintains a distinction between carjackings that occur during the robbery itself and vehicles stolen in preparation for a robbery; it is acceptable to include the value of carjacked vehicles as "loss," *United States v. Cruz-Santiago*, 12 F.3d 1 (1st Cir. 1993), but not vehicles stolen in preparation for and used during the robbery. *United States v. Austin*, 239 F.3d 1 (1st Cir. 2001).

In *Powell*, the defendant and an accomplice fled the scene of a bank robbery in a stolen sports utility vehicle. 283 F.3d at 947. In their haste, the bank robbers "ran a red light at

high-speed, collided with an occupied van, and continued on down the wrong side of the road before crashing into a telephone pole." *Id.* Relying on the text of § 2B3.1(b)(7) and the accompanying Application Notes (quoted above), the Eighth Circuit reasoned that the vehicle had been "taken" and "damaged" in the plain sense of those terms. *Id.* The *Powell* court also noted that specific offense characteristics are given general explanation in the "Relevant Conduct" guideline. *Id.* at 948. Since explicit instructions are not apparent in the robbery guideline as to the scope of "loss," the Eighth Circuit included the Relevant Conduct guideline in its determination of what constitutes "loss:"

> (a) . . . Unless otherwise specified, . . . (ii) *specific offense characteristics* . . . shall be determined on the basis of the following:
>
> > (1) (A)  *all acts and omissions* committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
> >
> > (B)  in the case of a jointly undertaken criminal activity . . . *all reasonably foreseeable acts and omissions of others in furtherance* of the jointly undertaken criminal activity,
> >
> > that occurred during the commission of the offense of conviction, *in preparation for that offense, or in the course of attempting to avoid detection* or responsibility for that offense;
>
> > \*\*\*
>
> > (3)  all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions . . . .

U.S.S.G. § 1B1.3 (emphasis added); *Powell*, 283 F.3d at 948. In citing this guideline, *Powell* emphasized the portion spe-

cifically including acts taken "in the course of attempting to avoid detection." *Id.* at 948 (quoting U.S.S.G. § 1B1.3). Hence, *Powell* concluded that in light of the plain meaning of the robbery guideline and the Relevant Conduct guideline, the value of the vehicle was rightfully considered "loss." *Id.* at 948.

The First Circuit, in two cases with strikingly similar facts to *Powell*, created a distinction between cases in which robbers steal the car as the robbery is being carried out, and cases in which they steal vehicles in preparation for a robbery. In *Cruz-Santiago*, the defendants seized a vehicle at gunpoint as they exited the bank in search of transportation to their hidden getaway car. 12 F.3d at 1-2. The court concluded that the full value of the vehicle should be included as "loss." *Id.* at 3.

In *Austin*, the defendant stole a vehicle early in the morning and used that vehicle to flee from a bank robbery later that same morning. 239 F.3d at 2. The court held that including the total value of the car as "loss" was inappropriate. It distinguished *Cruz-Santiago* as being dependent on the offense being a "continuous event" with the actual robbery. *Id.* at 7. *Austin* also relied on the fact that the theft of the car was not a "carjacking," which is itself one of the seven specific offense characteristics capable of enhancing the robbery sentencing level. *Id.*; *see* U.S.S.G. § 2B3.1(b)(5) (increases the level by two);U.S.S.G. § 2B3.1, cmt. n.1 (2003) (" 'Carjacking' means the taking or attempted taking of a motor vehicle from the person or presence of another by force and violence or by intimidation."). Donaby urges us to adopt the reasoning of *Austin* and refuse to add the value of the repairs to the van to the "loss" total from the robbery. Since Donaby's group of robbers stole the van five days before the bank robbery, he reasons that this acquisition was in preparation for the robbery, and not a "continuous event." *Austin*, 239 F.3d at 7.

We are convinced that the Eighth Circuit properly interpreted the Sentencing Guidelines in *Powell*. "Loss" should include "the value of the property taken, damaged, or destroyed," U.S.S.G. § 2B3.1, cmt. n.3 (2003); this amount is calculated by adding the "loss" caused by the underlying crime, and the "loss" caused "in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1). The "Author's Comments" to U.S.S.G. § 1B1.3 cite Donaby's precise fact pattern as being an appropriate use of § 1B1.3 to increase a "loss" determination. This commentary reads:

> [I]f a defendant (or an individual for whose conduct the defendant is accountable) steals a car in preparation for a bank robbery, the theft of the vehicle is relevant conduct to the robbery under subsection (a)(1), and the loss attributable to the theft of the car will be aggregated with the loss from the robbery (in applying § 2B3.1(b)(7)).

U.S.S.G. § 1B1.3, cmt. author's n.4(c)(i) (2003). Donaby and his fellow bank robbers stole the van in preparation for the robbery, and damaged the van in an attempt to avoid detection. The van damage was therefore "loss," and Donaby's offense level was properly increased by two.

Donaby's reliance on the *Austin* case is misplaced. Narrowly read, *Austin* only prevents the use of the *total* value of a getaway car stolen in preparation for the offense as "loss," regardless of damages incurred during the getaway. Nothing in *Austin* explicitly disallows the use of the amount of damage caused during a getaway from a robbery in the "loss" calculation under U.S.S.G. § 2B3.1(b)(7). Although the facts recited in *Austin* indicate there was substantial damage to the getaway car caused by a post-robbery police chase, it does not appear that the issue arose whether such damage incurred during the getaway could be used as

"loss." *Austin*, 239 F.3d at 3, 7-8. In the instant case, the district court appropriately adjusted Donaby's sentence based on the *repair cost* to Westport ($5189.85), not on the *full value* of the van ($34,445).

Moreover, the distinction between *Austin* and *Cruz-Santiago* by the First Circuit is not persuasive. The explanation that the theft of the car in relation to the robbery is not "continuous" and is "somewhat attenuated" ignores the "Relevant Conduct" guideline. *Austin*, 239 F.3d at 7-8. "Preparation for the offense," as well as attempts to "avoid detection" should be included in the determination of specific offense characteristics, including loss. *See, generally*, U.S.S.G. § 1B1.3. The *Austin* court also relied on the fact that there is a separate specific offense characteristic for carjacking. *Austin*, 239 F.3d at 7. The fact that the guideline allows a separate sentencing enhancement for "carjacking," however, does not equate to limiting the "loss" specific characteristic category to contemporaneous, carjacking-only thefts. In other words, "loss" in U.S.S.G. § 2B3.1(b)(7) is broader than the specific, separate offense characteristic of "carjacking" in U.S.S.G. § 2B3.1(b)(5).

## B. The Restitution Order

Donaby claims that the district court improperly awarded restitution to Shiloh based on the damage inflicted to a police vehicle during the getaway. He argues that this award goes beyond the statutory authority granted to the federal courts because: (1) the flight from the robbery is not an element of Donaby's conviction for either bank robbery or use of a firearm during a crime of violence, and (2) the damage to the police car occurred during the getaway and not during the robbery itself.

"We begin by noting that '[f]ederal courts possess no inherent authority to order restitution, and may do so only as

explicitly empowered by statute.'" *United States v. Randle*, 324 F.3d 550, 555 (7th Cir. 2003) (quoting *United States v. Hensley*, 91 F.3d 274, 276 (1st Cir. 1996)). By enacting the Mandatory Victims Restitution Act ("MVRA"), Congress explicitly required that "the court shall order" restitution to the victims of certain specified offenses. 18 U.S.C. § 3663A(a)(1). Bank robbery is such an offense. 18 U.S.C. § 3663A(c)(1).

The sole issue,[4] then, is whether Shiloh satisfies the statutory definition of "victim." Under the MVRA, "the term 'victim' means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered . . . ." 18 U.S.C. § 3663A(a)(2). Thus, if Shiloh was "directly and proximately harmed" by the bank robbery, an "offense for which restitution may be ordered," the district court is required to order restitution without regard to the defendant's financial status. *Id.*; *McIntosh*, 198 F.3d at 1003-04.

---

[4] The factual issue of whether the United States proved a definite amount of damage to the police car caused by this particular chase was not raised at the sentencing hearing or on appeal. "[D]iffuse estimates of loss may be appropriate for purposes of relevant conduct under the Sentencing Guidelines, but restitution tracks the recovery to which [the victim] would have been entitled in a civil suit against the criminal." *United States v. Behrman*, 235 F.3d 1049, 1052 (7th Cir. 2000) (quotations omitted) (alteration in original); *see also United States v. Menza*, 137 F.3d 533 (7th Cir. 1998) (vacating a restitution order under the similar Victim and Witness Protection Act and remanding for a hearing to determine whether the amounts cited by the Drug Enforcement Agency and a landlord were in fact caused by the crimes of which the defendant was ultimately convicted, as opposed to routine investigation costs and non-crime related cleaning costs). Since Donaby failed to raise or argue this issue, however, we can only assume that the district court acted properly in relying on the PSR. *McIntosh*, 198 F.3d at 1003.

Interpreting the statutory language set forth above, and other portions of § 3663A not relevant to this case, the Seventh Circuit has identified three situations in which restitution is authorized under the MVRA: (1) "to a victim directly harmed by the offender's *specific conduct* that is the basis of the offense of conviction," (2) to "a victim who is directly harmed by the offender's conduct in the course of committing an offense that involves *as an element* a scheme, conspiracy, or pattern," or (3) "if the parties so agreed in a plea agreement." *Randle*, 324 F.3d at 556 (emphasis in original) (quotations omitted). Donaby's convictions did not involve a scheme, conspiracy, or pattern as an element, and he was convicted by jury trial, so there was no plea agreement. In the instant case, then, the first scenario contemplated by *Randle* is the relevant inquiry.

In describing the first situation in which restitution is appropriate, the Seventh Circuit incorporates language from *Hughey v. United States*, a case interpreting the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663. *Hughey v. United States*, 495 U.S. 411, 413 (1990) (holding that the VWPA limits restitution to "the loss caused by the specific conduct that is the basis of the offense of conviction."). Due to the similarities between the MVRA and VWPA, courts apply the dictates of *Hughey* to MVRA cases. *See, e.g., Randle*, 324 F.3d at 555-56. Thus, to be "directly and proximately harmed" by the commission of the robbery, the loss to Shiloh must have been "caused by the specific conduct that is the basis of conviction," a phrase given meaning by the *Hughey* case.

In *Hughey*, the Supreme Court ultimately reversed a restitution order to repay several credit card companies damaged by the actions of the defendant. The defendant was indicted for three counts of theft by a Postal employee and three counts of unauthorized use of credit cards. In exchange for a guilty plea to one count of unauthorized use of

a credit card, Hughey received a dismissal of the other charges. *Hughey*, 495 U.S. at 413-14. In addition to a term of imprisonment, the district court ordered Hughey to repay those harmed by his misconduct. Because the district court included restitution for the damage caused by Hughey's behavior surrounding all six original counts, rather than the much smaller amount of damage from the single count to which he pled guilty, the lower court exceeded its authority in granting restitution for loss not caused by the specific conduct that was the basis of the offense of conviction. *Id.* at 422. The Seventh Circuit has repeatedly followed this rationale in case law dealing with plea bargains and restitution.[5]

The case before us presents an entirely different issue. Here the issue is whether Shiloh can, as a matter of law, be "directly and proximately harmed" by the criminal act at issue despite the delay between the acts satisfying the criminal elements of bank robbery and the damage to the police vehicle. 18 U.S.C. § 3663A(a)(2). This is not an in-

---

[5] *See Randle*, 324 F.3d at 557-58 (refusing to allow restitution for victims of fraudulent activity because the defendant pled guilty to only one of four counts and did not clearly agree in his plea agreement to pay restitution to specific persons not affected by that particular count); *United States v. Peterson*, 268 F.3d 533, 534-35 (7th Cir. 2001) (upholding the restitution order and plea agreement under 18 U.S.C. § 3663A(a)(3) where the defendant specifically consented in the agreement to pay for "all losses covered by the same course of conduct or common scheme," even though the precise amounts were to be determined by the judge at a subsequent sentencing hearing); *Behrman*, 235 F.3d at 1052-53 (vacating restitution award because the district court improperly found a promise to pay restitution for all economic losses related to the defendant's illegal activity in the plea agreement, despite the lack of specific language that would make clear that the agreement went beyond the payment of those found to be "victims" for purposes of the statute).

quiry, as in *Hughey*, into whether the restitution awarded arose out of the "offense of conviction" or from other conduct for which the defendant was not convicted. The district court did not improperly include restitution to victims of other bank robberies (or any other crime) of which Donaby has not been convicted. Instead, the damage arose out of the convicted offense of bank robbery.

The district court could properly conclude that robbing the bank directly and proximately led to the high-speed chase and the property damage that ensued. *Hughey* does not prevent a factual determination of causation. *See United States v. Cutter*, 313 F.3d 1, 7 (1st Cir. 2002); *United States v. Vaknin*, 112 F.3d 579, 590 (1st Cir. 1997) ("[T]he government must show not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal nexus between the conduct and the loss is not too attenuated (either factually or temporally) . . . . A sentencing court should undertake an individualized inquiry; what constitutes sufficient causation can only be determined case by case, in a fact-specific probe."). The government bears the burden of proof under a preponderance of the evidence standard. *United States v. McIntosh*, 198 F.3d 995, 1003 (7th Cir. 2000).

Donaby did not challenge the PSR, thus forfeiting the argument that its findings were not valid. *Id.* at 1003. Even if Donaby had challenged this determination, we find that it was not in error. But for the robbery, it is certain that this particular chase would not have occurred. Moreover, the need to elude the police after the robbery is a likely and foreseeable outcome of the crime. Donaby foresaw this possibility, and he arranged for three getaway cars, including the stolen white van, to reduce the risk of the police catching him. Courts have often commented on the factual and temporal interconnectedness of bank robbery and flight. *United States v. Williams*, 344 F.3d 365, 372 (3d Cir.

2003) ("Our case law has consistently treated escape as part and parcel of a bank robbery, including federal bank robbery as defined in 18 U.S.C. § 2113 . . . ."); *United States v. Metzger*, 233 F.3d 1226, 1228 (10th Cir. 2000) ("Flight and pursuit are links in the 'chain of events' set in motion by a bank robbery . . . .") (quotations omitted); *United States v. Muhammad*, 948 F.2d 1449, 1456 (6th Cir. 1991) ("As the crime of robbery cannot be completed without some form of flight or attempted flight, the crime is more naturally understood to include the act of fleeing and the immediate consequences of such flight."). In sum, Shiloh was a victim of the bank robbery because Donaby and his friends directly and proximately caused the damage to the police car by committing the bank robbery.

Donaby seeks support in Ninth Circuit case law, decided under the VWPA, for the proposition that only immediate consequences from acts taken to satisfy the specific elements of the convicted offense may be included as restitution. *United States v. Reed*, 80 F.3d 1419 (9th Cir. 1996). In *Reed*, the defendant was convicted of being a felon in possession of a firearm. The police apprehended Reed after he crashed a stolen van into other vehicles at the end of a high-speed pursuit. *Id.* at 1420. The Ninth Circuit reversed a determination that restitution for damage to the stolen van and the other vehicles was appropriate. Relying on *Hughey* and Ninth Circuit cases decided after *Hughey*, *Reed* determined that the trial court was prohibited from ordering restitution "for conduct that is related to the offense of conviction, but that is not an element of the offense." *Id.* at 1422. The result on the facts of *Reed* may well have been appropriate; Reed was convicted of possession of a firearm, but the police chase causing the damage was a consequence of Reed's theft of the van he was driving.

Donaby contends that, under *Reed*, because fleeing is not an element of his offenses, restitution for damage to the

police car is inappropriate. The text of the VWPA, the MVRA, and the *Hughey* opinion, however, do not limit restitution to the elements of the offense. The statutes limit recovery to victims "directly and proximately harmed as a result of the commission of an offense . . . ." 18 U.S.C. § 3663(a)(2); 18 U.S.C. § 3663A(a)(2). The *Hughey* case, in the context of denying restitution for harm directly caused by thefts of credit cards not included in the count by which the defendant was convicted, limited restitution to loss caused by "specific conduct that is the basis of the offense of conviction." *Hughey*, 495 U.S. at 413. Thus, while fleeing the bank is not an element of bank robbery, the damage to Shiloh was a direct and proximate consequence of the specific conduct involved in robbing the bank.

Other case law recognizes that the MVRA is not limited to conduct fulfilling the elements of the crime. The Eighth Circuit affirmed the use of § 3663A to compensate a bank customer who was present during the defendant's convicted crime of bank robbery. *Moore v. United States*, 178 F.3d 994 (8th Cir. 1999). The customer did not suffer physical or financial harm at the moment of the defendant's actions that satisfied the elements of bank robbery. *Id.* at 997. Nevertheless, acting pursuant to the statute, the court ordered restitution of $528 to replace the customer's lost income while he gave statements to the police, identified the suspects, and prepared for and testified at trial. *Id.* at 1001 (quoting 18 U.S.C. § 3663A(b)(4) ("[I]n any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution . . . .")).

The participation of witnesses in the judicial process is not a necessary element of robbery by a defendant, yet the MVRA expressly provides for such damages as being directly and proximately caused by the crime committed. This portion of the statute seeks to explain the proper measure

of restitution damages; it is not a list of exceptions to the earlier limitations in the statute. *See* 18 U.S.C. § 3663A(b) (establishing the methodology the district court should use in determining the amount of restitution to award to the victim in a variety of scenarios). Congress sought to make clear that the costs to private citizens of testifying in a criminal case were direct and foreseeable consequences of crime. Damages from police pursuits following bank robberies are not specifically listed in the statute as appropriate damages to award to "victims." A high-speed chase, however, is an even more direct and foreseeable consequence of robbery than many of the expenses provided for in the statute and should therefore be included within its scope.

## III.  Conclusion

The district court's assessment of the defendant's sentencing guideline level and the district court's determination that restitution is owed for damage to the police car are hereby AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*