# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 04-1572

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

DANIEL D. RAND,

*Defendant-Appellant*.

———————

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:02-CR-59—**Rudy Lozano**, *Judge*.

———————

ARGUED NOVEMBER 9, 2004—DECIDED APRIL 5, 2005

———————

Before FLAUM, *Chief Judge*, and CUDAHY and POSNER, *Circuit Judges*.

CUDAHY, *Circuit Judge*. Appellant Daniel Rand pleaded guilty to a charge of conspiracy relating to an identity-theft scheme. Pursuant to this scheme, Rand and his co-conspirators stole personal information from (among others) employees of the Gary, Indiana public school system, used that information to obtain credit cards and made purchases with those credit cards. Based upon his guilty plea, Rand was sentenced to 21 months in prison and ordered to pay restitution in excess of $57,000. Rand now appeals this restitution

order, claiming that the district court impermissibly included in its calculation losses of identity-theft victims not listed in the indictment or specifically identified in Rand's guilty plea.

## I.  FACTUAL BACKGROUND & DISPOSITION BELOW

On March 3, 2003, Appellant Daniel Rand pleaded guilty to a charge of conspiring to steal identification information from employees of the Gary, Indiana public school system and to use that information to fraudulently obtain credit cards, in violation of 18 U.S.C. § 371. This charge represented Count 1 of a seven-count indictment brought against Rand, and the other six counts were dismissed after entry of Rand's guilty plea. Count 1 stated specifically that four street addresses had been used in the scheme, and it described the general nature of the conspiracy as follows:

> It was part of the conspiracy that the defendants: (1) obtained the names and social security numbers of employees of the Gary Community School Corporation, Gary, Indiana, in order to establish credit in the employees' names without their knowledge, authority and permission for the defendants' own personal purposes and benefit; (2) obtained credit cards in the employees' names in order to purchase merchandise for the defendants' own personal purposes and benefit; . . . (4) obtained and redirect[ed] the fraudulent credit cards, credit card statements, billing statements, and other mail in order to conceal the deceptive use of the [sic] of the employees' identification for the defendants' own personal purpose and benefit.

(Grand Jury Charges, 8/22/2002 at 2.) The indictment then listed 28 separate overt acts of identity theft, specifying the individual victims whose identities were used and the approximate time of the theft. Rand initially entered a plea

of not guilty to the charges, but on February 27, 2003, he filed a Petition to Enter a Change of Plea, in which he pleaded guilty to Count 1 of the indictment. In the plea, he specifically admitted to several acts of fraud involving the identity information of five individual victims. Rand reiterated his admission at his plea hearing on March 3, 2003.

After entry of Rand's guilty plea, pre-sentence reports were drafted, the last of which asserted that the conspiracy actually implicated fraudulently obtained credit cards sent to nine different street addresses (not just four addresses as indicated in Count 1) and that Rand could be held responsible for 25 additional incidents of identity theft not mentioned specifically in the indictment. Based on these figures, the report concluded that Rand was responsible for $90,744.30 in actual losses and $8,915.49 in intended losses under a theory of relevant conduct. Rand challenged this calculation, alleging that he should be held responsible only for the specific fraudulent acts he affirmatively admitted in his guilty plea, which gave rise to losses totaling just $12,594.90.

At sentencing, the district court adopted neither of these figures. The court found that the evidence conclusively linked Rand to only four street addresses: One that he had already admitted to using in the conspiracy, two that he referenced in his Change of Plea hearing and one that was identified by his sister (and co-conspirator), whose testimony on the matter was never refuted. (R. at 4-236-37.) Based on these findings, the court settled on a sum of $57,431.67, which included the damages caused by all the overt fraudulent acts perpetrated using these four addresses. Most of this total reflected losses resulting from acts of fraud explicitly listed in the original indictment, but $7,241.76 was associated with identity theft victims who were identified during court proceedings but were neither employees of the Gary public school system nor mentioned specifically in the indictment. (*See* R. at 4-234-44.) The district court ruled

that Rand was required to pay the entire $57,431.67 in restitution, and the court sentenced Rand to 21 months in prison (the highest term allowable under the applicable sentencing range).

The remaining counts of Rand's indictment were dismissed on February 27, 2004. The district court entered its judgment, including the $57,431.67 restitution order, on March 3, 2004. The judgment was subsequently amended on March 5, 2004, and Rand timely filed his Notice of Appeal on the same day. Rand now asserts that the district court's restitution calculation was impermissible since it included damages relating to individual identity theft victims whom Rand did not affirmatively identify in his guilty plea, who were not identified specifically in the original indictment or who were not employees of the Gary, Indiana public school system.[1] For the reasons that follow, we affirm.

## II.  JURISDICTION

This is a direct appeal from a conviction pursuant to a guilty plea and a sentence entered on February 26, 2004. The final judgment in this case was entered by amended order on March 5, 2004, and Appellant's timely Notice of Appeal was filed on that same day. The jurisdiction of the district court rested on 18 U.S.C. § 3231. Accordingly, we now have jurisdiction pursuant to 28 U.S.C. § 1291, which provides for appeals from final orders of the district courts, and 18 U.S.C. § 3742, which covers appeals from final criminal sentences entered in the district courts.

---

[1]  This last point is significant because the charges against Rand identify the victims of the conspiracy as "employees of the Gary Community Schools Corporation, Gary, Indiana." (Grand Jury Charges, 8/22/2002 at 2.)

### III.  DISCUSSION

The district court's authority to issue a restitution order is an issue of law that we review *de novo. U.S. v. Wells*, 177 F.3d 603, 608 (7th Cir. 1999). The government bears the burden of demonstrating the correct amount of the restitution award by a preponderance of the evidence, *see* 18 U.S.C. § 3664(e); *United States v. Sensmeier*, 361 F.3d 982, 988 (7th Cir. 2004), and "[w]e review the district court's calculation of the amount of restitution for an abuse of discretion." *Sensmeier*, 361 F.3d at 988 (citing *U.S. v. Newman*, 144 F.3d 531, 542 (7th Cir. 1998)). Reversal is warranted under this standard if the district court relied on "inappropriate factors" in arriving at the restitution amount. *Id.*

Rand pleaded guilty to conspiring to commit identity theft in violation of 18 U.S.C. § 371. He does not dispute that federal law authorized—indeed required—the district court to order restitution for such an offense under the Victim and Witness Protection Act (VWPA), 18 U.S.C. § 3663, and the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A(c)(1). The only controversy here concerns the amount of the restitution order. Specifically, Rand alleges that the order is invalid because it holds him responsible for acts of identity theft relating to victims that were not specifically identified in the original indictment and thus not covered by his guilty plea. This claim is without merit.

It is well-settled that, as a general matter, "[f]ederal courts possess no inherent authority to order restitution, and may do so only as explicitly empowered by statute." *United States v. Randle*, 324 F.3d 550, 555 (7th Cir. 2003) (internal quotations omitted). As such, restitution orders are subject to certain important strictures. The most basic of these is the requirement that there be a "direct nexus between the offense of conviction and the loss being remedied." *Id.* at 556. That is, a restitution award is authorized only with respect to that loss caused by "the specific conduct that is the

basis of the offense of conviction." *Hughey v. United States*, 495 U.S. 411, 413 (1990).[2] Thus "both the amount of the restitution award and the persons to whom such an award may be directed are limited by the circumstances of the offense for which the defendant has been convicted." *Randle*, 324 F.3d at 556.

Restitution normally "tracks 'the recovery to which [the victim] would have been entitled in a civil suit against the criminal,'" but § 3663A(a)(3) also "permits the defendant to undertake additional restitution obligations via a plea agreement." *United States v. Behrman*, 235 F.3d 1049, 1052 (7th Cir. 2000) (quoting *United States v. Martin*, 195 F.3d 961, 968 (7th Cir. 1999)). Thus, in a case such as this one, where a defendant enters a guilty plea, "[e]xamination of the conduct constituting the commission of a crime only involves consideration of the conduct to which the defendant pled guilty and nothing else." *Randle*, 324 F.3d at 556. Similarly, consideration of "relevant conduct" for sentencing purposes may not serve as the basis of a restitution award unless it is also "charged conduct" or covered in a plea agreement. *United States v. Scott*, 250 F.3d 550, 553 (7th Cir. 2001); s*ee also Randle,* 324 F.3d at 556 (citing *Scott* for the same proposition).

However, while federal law carefully circumscribes the type of *conduct* upon which restitution orders may be based, it defines the "victims" of such conduct somewhat more broadly:

> For the purposes of this section, the term 'victim' means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that

---

[2] A portion of *Hughey*'s holding was superceded by subsequent amendments to 18 U.S.C. § 3663, though these changes are not germane to the general rules cited here.

> involves as an element a scheme, conspiracy, or pattern of criminal activity, *any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.*

18 U.S.C. §§ 3663(a)(2), 3663A(a)(2) (emphasis added). Our prior constructions of this language have "distill[ed] three situations in which restitution is authorized under the MVRA: first, to a victim directly harmed by the offender's 'specific conduct that is the basis of the offense of conviction'; second, to a victim who is directly harmed by the offender's conduct in the course of committing an offense that involves 'as an element a scheme, conspiracy, or pattern'; and third, if the parties so agreed in a plea agreement." *Randle*, 324 F.3d at 556 (citations omitted).

Absent a specific contrary provision in a plea agreement, a court ordinarily may not order restitution for individuals not included within the statutory definition of "victim," *Behrman*, 235 F.3d at 1052-53, nor for individuals who were not affected by the specific offense conduct to which a defendant pleaded guilty, *Randle*, 324 F.3d at 557-58. However, where a defendant has consented to restitution for specifically charged conduct, the judge may determine the exact amount at a later sentencing hearing, *United States v. Peterson*, 268 F.3d 533, 534-35 (7th Cir. 2001), and in some cases restitution may be ordered for certain "direct and foreseeable consequence[s]" of a crime, even if the conduct at issue does not constitute an element of the crime itself, *United States v. Donaby*, 349 F.3d 1046, 1055 (7th Cir. 2003) (allowing restitution for damages caused by police pursuit following a bank robbery).

Thus, while the *conduct* underlying a restitution order must be specifically articulated in the charge or a plea agreement, specific victims need not be, especially in a case involving "as an element a scheme, conspiracy, or pattern of criminal activity." 18 U.S.C. §§ 3663(a)(2), 3663A(a)(2). Rand's guilty

plea, concerning an organized identity-theft conspiracy, clearly qualifies as such a case. Accordingly, any individual "directly harmed" by Rand's "criminal conduct in the course of the [fraud] scheme, conspiracy, or pattern" is presumptively included in the restitution calculus. 18 U.S.C. § 3663A(a)(2).[3]

Moreover, Rand may be held responsible for losses caused by the foreseeable acts of his co-conspirators. Co-conspirators generally are jointly and severally liable for injuries caused by the conspiracy, and this principle applies to the restitution context no less than to sentencing. *See United States v. Martin*, 195 F.3d 961, 968-69 (7th Cir. 1999). In fact in *Martin* we stated that even a defendant not charged with conspiracy could be held responsible for losses caused by co-defendants where there was evidence of a common "scheme" or plan. 195 F.3d at 968-69.[4]

Contrary to Rand's characterization of things, the district court's restitution order fell squarely within these parameters. The authorities in this circuit instruct that the conduct for which the restitution is ordered must be properly charged, and here Rand was charged with conspiring to defraud a host of unwitting victims. Under such circumstances, the trial court must determine, based on the evidence before it, the scope of the conspiracy and the damages it caused,

---

[3] It is also important to note that, since restitution is essentially "[a] civil remedy included with a criminal judgment," the facts underlying a restitution order need not be established beyond a reasonable doubt and thus are not governed by *Apprendi*, *Booker* and the other recent jurisprudence addressing sentencing issues. *Behrman*, 235 F.3d at 1054; *see also United States v. Szarwark*, 168 F.3d 993, 998 (7th Cir. 1999).

[4] In *Martin* we also observed that "in determining the scope and consequence of the scheme the judge was not limited to the evidence presented at the trial." 195 F.3d at 969.

and Rand may be held responsible for any and all such damages. Here the district court properly looked to the evidence adduced in proceedings before it to determine the extent of this conspiracy and the victims it affected.

Rand's attempts to limit the scope of his liability by listing in his plea agreement acts relating to only a few individual victims is thus unavailing. Rand may not evade the clear import of the MVRA and leave his victims in the proverbial lurch simply by artful pleading. Having pleaded guilty to conspiracy, he may not then pick and choose the victims for which he will be held responsible. Similarly, it is irrelevant that certain victims identified by the district court were not employees of the Gary, Indiana public school system; the district court found that the damages to each victim were caused by the same common scheme, perpetrated using one of four addresses identified in proceedings below.

In sum, all of the losses included in the restitution order stemmed from fraudulent acts taken pursuant to a single identity theft conspiracy—the specific criminal conduct to which Rand pleaded guilty—and related to individuals who were "directly harmed by the defendant's [or his co-conspirators'] criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(a)(2); *Randle*, 324 F.3d at 556. Moreover, all the included losses related to street addresses that Rand or his co-conspirators specifically admitted to using in the course of the conspiracy. The order thus was supported by the requisite preponderance of the evidence. *See* 18 U.S.C. § 3664(e); *Sensmeier*, 361 F.3d at 988. In light of these considerations, we cannot say that the district court abused its discretion in calculating Rand's restitution order, nor that its calculation was based on "inappropriate factors." *Sensmeier*, 361 F.3d at 988. There was no error.

## IV.  CONCLUSION

The restitution order issued by the district court is hereby AFFIRMED.

A true Copy:

      Teste:

                  _____
                  *Clerk of the United States Court of*
                     *Appeals for the Seventh Circuit*