NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 5, 2018
Decided July 31, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 17-1944

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Northern District of Illinois, |
| | Eastern Division. |
| *v.* | |
| | No. 15 CR 00737 |
| CARYN BENSON, | |
| *Defendant-Appellant*. | Edmond E. Chang, |
| | *Judge.* |

**O R D E R**

Caryn Benson pleaded guilty to embezzling roughly $33,000 from her employer, the Field Museum of Natural History, during a three-month period but admitted to engaging in a much larger scheme—stealing hundreds of thousands of dollars from her sales of museum memberships over six years. She cooked the accounting books to cover her tracks, and a museum investigation found no other culprit for its losses. Based on a forensic expert's analysis and the absence of evidence that anyone else had embezzled membership revenue, the district court determined that Benson was responsible for all of the museum's membership-revenue losses during the six-year period. Because the forensic expert's analysis, the museum's investigation, and Benson's accounting

position show that she more likely than not is culpable for all of the museum's membership-revenue losses, we affirm.

Benson began working in 2007 as a data-records supervisor at the Field Museum, selling museum memberships. When a customer purchased a membership, Benson was supposed to record the sale in the museum's ticket-management software (a point-of-sale system called Patron's Edge) and a membership database.

One year later, Benson began stealing cash that museumgoers gave her when purchasing memberships—a scheme that continued until the museum fired her in 2014. When Benson pocketed this cash, she recorded the transaction in the museum's membership database but not in Patron's Edge. Benson then generated fraudulent reports to reconcile Patron's Edge and the membership database, falsely telling the museum's finance department that the cash revenue matched the number of memberships purchased with cash. During that same period, Benson also stole cash from the museum when she sold beverage tickets at museum fundraisers.

The jig was up in 2014. One of Benson's coworkers saw her sell a museum membership but not record it in Patron's Edge. Around this time, another museum staff member realized that the museum's membership revenue was short by a non-negligible amount. After the museum discovered that several thousand dollars went missing from Benson's cash box for the week, human-resources officers confronted her, and she confessed to stealing cash from the museum. The museum then fired Benson and hired a law firm to investigate its losses. The firm conducted extensive interviews of museum staff and identified no other explanation for the losses besides Benson's theft.

The government charged Benson with embezzling $33,014 in 2014 from the Field Museum in violation of 18 U.S.C. § 666(a)(1)(A) ("Theft or bribery concerning programs receiving Federal funds"). She pleaded guilty and acknowledged embezzling cash from membership and beverage-ticket sales between June 2008 and April 2014. She also agreed to pay restitution "arising from the relevant conduct."

The parties disagreed about how much Benson stole. The government believed that her theft caused roughly $900,000 in losses, while Benson pegged the amount at $410,000. Benson (through an expert) reached this figure by totaling the amount of money that she deposited into her bank account between 2009 and 2014, excluding her museum salary.

The government arrived at its loss number through a three-step analysis performed by a forensic accountant, Rex Homme. First, comparing the money that the museum received from membership sales to the number of memberships sold, Homme concluded that the museum had $873,267 less than it should have. Second, Homme examined the extent of the museum's losses attributable to Benson's theft. For this inquiry, he compared Benson's cash-membership sales in Patron's Edge to paperwork documenting the memberships she issued during four sample months: April 2012, July 2013, December 2013, and March 2014. He chose these months because they had a relatively high number of membership sales and thus would be more likely than other months to show sources of the museum's losses not attributable to Benson. He found that the museum's membership-revenue losses closely matched the losses caused by Benson's theft over the four sample months and therefore concluded that her theft was responsible for all of the membership-revenue losses between 2008 and 2014. Third, Homme determined that Benson stole roughly $33,000 from beverage-ticket sales.

The district court ruled that the government had proven that Benson more likely than not stole $906,484 from the museum. The court reasoned that Homme's methodology was "reliable," pointing to the close match between the museum's lost membership revenue and the amount stolen by Benson during the four sample months. Based on this close match, the court said "there is no systemic reason to think that there was going to be any difference in an analysis from earlier years" as compared to the later sampled years. The court added that the sample results were supported by the lack of evidence of any source of loss besides Benson's theft. The court also explained that there was no evidence of any data-entry errors with Patron's Edge around 2008 (when the museum began using this system) that justified questioning the accuracy of the losses attributed to Benson. Rejecting Benson's proposed methodology for calculating loss, the court emphasized the difficulty of tracing cash.

The court imposed a sentence of three years' imprisonment, one year of supervised release, and $903,284 in restitution (the museum held onto Benson's final $3,200 paycheck). The court calculated a Sentencing Guidelines range of 41 to 51 months' imprisonment based on an offense level of 22 and criminal-history category of I. U.S.S.G. § 5, Pt. A. Benson received a spike in her offense level (by 14) because her theft caused a loss of between $550,000 and $1.5 million, *see* U.S.S.G. § 2B1.1(b)(1)(H), and the court denied her a three-level reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility. Even if she had qualified for acceptance of responsibility, the court added that it would not have changed the sentence because it would have been "a very technical acceptance of responsibility," given that she did not admit to more than half of

the loss amount. Finally, the court considered Benson's mitigation arguments but underscored the need for deterrence and explained that Benson's conduct was very serious because of the amount that she stole, the number of times she stole, and the status of the museum as a nonprofit that "does so much for society."

On appeal Benson argues that the district court relied on an insufficient basis—the four-month sample—to conclude that she more likely than not was responsible for all of the museum's membership-revenue losses. (The government must prove a reasonable estimate of the loss amount by a preponderance of the evidence. *See* U.S.S.G. § 2B1.1 cmt.3(C); *United States v. Gumila*, 879 F.3d 831, 834 (7th Cir. 2018).) She emphasizes that the government provided no evidence to suggest (1) that there was a close match between the museum's losses and those attributable to her during the years not sampled (2008–2011); or (2) that the sampled months were representative of the duration of her scheme.

We disagree. The government met its burden because three facts, in combination with the four-month sample, show that Benson more likely than not is responsible for all of the museum's membership-revenue losses. First, as the district court noted, she is the only known source of the museum's losses during the non-sampled months; the museum's investigation found no other explanation for its losses. Second, Benson was the only employee selling museum memberships who also was responsible for reconciling Patron's Edge and the membership database. She therefore was the only employee selling memberships who could cover her tracks. If there were other membership-revenue thieves, she had a strong incentive to identify them to the government, but she has not done so. Third, the average amount that the museum lost per month during the non-sampled months ($12,317.48) fits within the range of her theft during the sampled months (between roughly $9,500 and $23,500).

Benson's remaining challenges to the district court's loss calculation lack merit. She contends that the district court improperly disregarded her accounting expert's proposed method of calculating loss. The court, however, gave a sufficient basis to reject her methodology, logically disagreeing with her assumption that the government could track all of the cash she stole. *See United States v. Pu*, 814 F.3d 818, 827–28 (7th Cir. 2016). Benson argues further that the court's loss calculation suggests an implausible trend: between 2010 and 2013, the amount per year that she stole decreased while the amount she deposited into her bank account increased. But this trend does not justify "a definite and firm conviction that a mistake has been made" because, as the district court suggested, she possibly became more brazen in the later years by chancing deposits of

more stolen funds into her bank account. *United States v. Schuster*, 467 F.3d 614, 616 (7th Cir. 2006) (internal quotation marks and citation omitted). Benson also asserts that the government's loss calculation ignores the possibility that employees inputted erroneous information into Patron's Edge and the membership database. The documents she points to (her personnel records and a report of the museum's investigative interview with the Director of Memberships), however, do not show data-entry errors.

Benson next challenges, with regard to the Guidelines calculations, the district court's refusal to grant her a three-level reduction in offense level for acceptance of responsibility. *See* U.S.S.G. § 3E1.1. She notes that she disagreed only with the government's method for calculating loss and "pleaded guilty, admitted to significant relevant conduct, and provided a 'candid and full unmasking' of the methods she used for the charged and relevant conduct."

The district court did not clearly err because Benson did not meet two of the three qualifications for acceptance of responsibility: she failed to "demonstrate sincere remorse or contrition" and to avoid falsely or frivolously contesting relevant conduct. *United States v. Garcia*, 754 F.3d 460, 486 (7th Cir. 2014) (internal quotation marks and citation omitted). As the district court explained, Benson did not accept responsibility for more than half of the funds she stole and raised a frivolous argument about the government's loss calculation at sentencing. (She contended that the government's loss calculation was undermined by the slow entry of sales into the museum's membership database—a practice that would reduce the discrepancy with Patron's Edge and therefore, benefitting her, the loss attributed to her theft.) Moreover, she never expressed remorse for her conduct. In any event, the district court said that it would have imposed the same sentence even if Benson qualified for acceptance of responsibility, so any error by the district court in this matter would be harmless. *See United States v. Abbas*, 560 F.3d 660, 667 (7th Cir. 2009).

Benson finally argues that the district court erred by ordering her to pay restitution for relevant conduct (her membership-revenue theft) without finding that it was part of the same scheme, conspiracy, or pattern of criminal activity as her offense conduct (her theft of beverage-ticket money). But the district court did not have to make any such finding because, in her plea agreement, Benson agreed to pay restitution for her relevant conduct. *See United States v. Rand*, 403 F.3d 489, 494 (7th Cir. 2005).

Because the government demonstrated that Benson is more likely than not culpable for all of the museum's losses, we AFFIRM.